William H. Bond, Appellant v. Josephine Riley et. al.—296 S. W. 401.

Division One, June 25, 1927.

1. **WILL: Ambiguity: Extrinsic Evidence.** If from a reading of his will doubt or uncertainty arises as to the testator's true intention, extrinsic facts and circumstances are admissible to explain the language used therein, regardless of the nature of the ambiguity, whether it be patent or latent. Such facts as will enable the court to understand and interpret the will as if testator were living are admissible.

2. ———: **Middle Name or Initial of Devisee.** No rule of law of this State requires courts in the interpretation of wills to ignore and disregard the middle name or initial of a named devisee. The court cannot rule that by William N. Bond the testator meant William H. Bond, unless extrinsic facts and circumstances disclose that the testator used the middle initial "N" by mistake, and not designedly.

3. ———: **Contradictory Clauses.** If possible, in accordance with the testator's general intention, the will should be so construed as to harmonize inconsistent and repugnant clauses, and to give effect to each of them, but where two clauses are entirely contradictory that clause should prevail which most nearly appears to express the intention of the testator as gathered from the rest of the will.

4. ———: **Presumption against Intestacy.** In interpreting a will courts always start with the presumption that testator intended to dispose of his whole estate, and the presumption is against partial intestacy where the will, as a whole, indicates the intent of the testator to make a complete disposition of all his property, the reason being to prevent the incongruous situation of the estate passing partly by will and partly by descent.

5. ———: ———: **Pretermitted Heir.** That testator's grandson should take by descent as a pretermitted heir is not in accord with his apparent purpose to dispose of all of his property by will.

6. ———: **Latent Ambiguity: Explanation by Scrivener.** If a description of a devisee raises a doubt as to what person was intended, and a consideration of the facts and circumstances surrounding the testator at the time he executed his will still leaves a doubt as to which of two grandsons was the intended devisee of real estate described in a certain paragraph, the testimony of the scrivener as to the declarations of the testator's intentions are admissible for the purpose of explaining the latent ambiguity.

7. ———: ———: **Testator's Declarations: Explanation of Intentions.** Declarations of the testator are never admissible for the purpose of establishing an intention contrary to that clearly expressed in the will, but are admissible in aid of an elucidation of an ambiguous and inaccurately expressed

description of a devisee appearing on the face of the will. Where there was no person answering the description of "my grandson, William N. Bond" living at the time the will was executed and had not been for twenty-five years, evidence of the testator's declared intentions is admissible as an aid to a determination of which of two grandsons was the intended devisee.

8. WILL: Latent Ambiguity: Testator's Declarations: Explanation of Intentions: Grandson Described by Father's Name: Correction. In the fourth paragraph the testator, Newton Bond, declared that "having heretofore advanced to my son John C. Bond his share of my estate, his heirs shall take nothing more under this will;" and the plaintiff, William H. Bond, was one of such heirs. In the fifth paragraph the testator gave "to my grandson, William N. Bond" certain accurately described real estate. The extrinsic evidence showed that testator had no grandson named William N. Bond, but had had a son by that name, who had been dead for twenty-five years, and that at the time the will was made a son of said son named Boyd C. Bond, who was not named in the will, was living with testator and had been for a long time. **Held**, first, that, although the testator at the time the will was drawn had only one grandson whose first name was William and he was the plaintiff, William H. Bond, he, being an heir of John C. Bond, was clearly excluded by the fourth paragraph. **Held**, second, that the testimony of the scrivener who wrote the will that the testator said that he "wanted his grandson, William's son, to have a part of the property;" that he understood the grandson's name was "William Newton, named after him" (testator); that it was the fifth clause of the will by which the testator meant to provide for this grandson; that on his pencil draft he wrote that this property was to go to "my grandson, William N." and that he thought at the time that this grandson's name was "William N."; and that the grandson intended was the one who at the time lived with testator, and whose name he later learned was Boyd C. Bond; and the testimony of the executor that testator always referred to Boyd C. Bond as "Bill's boy" and said he wanted "Bill's boy to share in his estate," was competent to explain the ambiguous description "my grandson, William N. Bond," and to authorize a correction of the description to read "my grandson, Boyd C. Bond."

---

Corpus Juris-Cyc. References: **Names**, 29 Cyc., p. 269, n. 41. **Wills**, 40 Cyc., p. 1388, n. 90; p. 1393, n. 17; p. 1394, n. 24; p. 1409, n. 4; p. 1416, n. 35, 36; p. 1429, n. 13; p. 1435, n. 36.

Appeal from Ozark Circuit Court.—*Hon. Fred Stewart*, Judge.

Affirmed.

*S. W. James, Mark A. McGruder, M. E. Morrow* and *William D. Roberts* for appellant.

(1) A testator's meaning is to be found in his will alone. From the will itself we must learn the testator's intent. But if the language employed is of doubtful meaning or susceptible of either of two constructions evidence as to the condition of the testator's feeling toward the persons affected by the will is competent as it tends to put the court in possession of the facts as the testator viewed them and helps to explain the doubtful passages. Hurst v. Von De Veld,

158 Mo. 239; Murphy v. Carlin, 113 Mo. 112; Snyder v. Toler, 179 Mo. App. 381.   (2)   The court will not make a will for testator. Its duty is to ascertain his intention as gathered from all its words and its four corners, and to give effect to that intention; and in getting at his intention, the court as nearly as may be puts itself in his environment, stands in his shoes and looks with his perspective through his eyes.   Stewart v. Jones, 219 Mo. 615; Sanitarium v. Mc-Cune, 112 Mo. App. 338; Trustees v. May, 201 Mo. 369.   (3)   The doctrines that in the construction of a will the court must ascertain the testator's intention from the whole will itself, is so firmly established by the courts of this State, as to become almost an elementary principle of law.   Dameron v. Layton, 234 Mo. 627; Armour v. Frey, 226 Mo. 646; Lich v. Lich, 153 Mo. App. 401; Matthews v. Van Cleave, 282 Mo. 19; Trustees v. May, 201 Mo. 369; Grace v. Perry, 197 Mo. 559; Brooks v. Brooks, 187 Mo. 476; Metz v. Wright, 116 Mo. App. 631. (4)   Explanatory evidence should be restricted to the portrayal of the environment of the testator and his feeling towards the persons affected, and should not include declarations he may have made concerning his interpretation of words employed in the will at his direction. Such declarations would be to violate the rule that "a testator's meaning is to be found in his will alone."   A formal will would be of little practical value if it could be contradicted, varied or explained by such proof of such declarations of the testator.   Snyder v. Toler, 179 Mo. App. 381; Webb v. Hayden, 166 Mo. 46.   Alleged declarations of a testator made after the execution of the will are incompetent in a suit to construe the will.

SEDDON, C.—Suit in equity, brought in the Circuit Court of Howell County by plaintiff, William H. Bond, who is a grandson of Newton Bond, deceased, asking a construction of the will of Newton Bond, which was duly probated in the Probate Court of Howell County on July 3, 1922.   The suit was transferred to the Circuit Court of Ozark County upon change of venue.   Omitting the formal parts of the will, the several paragraphs or clauses thereof are as follows:

"First.   All my just debts, including funeral expenses shall be paid.

"Second.   I having heretofore advanced to my daughter, Josephine Riley, her share of my estate, she shall take nothing more under this will.

"Third.   I having heretofore advanced to my son, Carroll J. Bond, his share of my estate, he shall take nothing more under this will.

"Fourth.   I having heretofore advanced to my son, John C. Bond, his share of my estate, his heirs shall take nothing more under this will.

"Fifth. (1) I give and bequeath to my son, William Bond, lot two in block twenty-seven in the original City of West Plains, Howell County and State of Missouri, subject to the payment of any mortgage or incumbrance that may be on said property at my death.

"Fifth. (2) I give and bequeath to my grandson, William N. Bond, an undivided half interest in the west one hundred and ten feet (110) of lot one in block twenty-seven in the original town, now City of West Plains, in Howell County and State of Missouri, subject to the payment of any mortgage or incumbrance that may be on said property at my death.

"Sixth. I give and bequeath to my daughters, Ellen Haynes and Annie Arnett, the one undivided half interest in the west one hundred and ten feet of lot one in block twenty-seven in the original town, now City of West Plains, in Howell County and State of Missouri, subject to the payment of any mortgage or incumbrance that may be on said property at my death.

"Seventh. It is my request that my executor hereinafter named take charge of the buildings on Lots One and Two, in Block Twenty-seven, and rent said buildings to the best advantage for such time as the rents and profits will pay off any incumbrance on said lots, when all incumbrances by me placed on said lots are fully paid, my said executor shall deliver said property to the parties herein named as my devisees, said executor to keep up the improvements and pay the taxes out of the rents from said property while same is in his possession.

"Eighth. Whatever remains of my estate (other than property hereinbefore named), after paying my just debts and funeral expenses, I give and bequeath to my son, William Bond, and his mother, Perlina Bond, in equal shares.

"Ninth. I hereby appoint W. W. Toler of West Plains, Missouri, Executor of this my last will and testament."

Plaintiff is a son of John C. Bond, who is named in paragraph "Fourth" of the will. John C. Bond was a son of the testator by a first marriage and predeceased his father; Newton Bond, the testator, prior to the making of the will, leaving a widow and five children, including plaintiff, surviving. All of said five children of John C. Bond survived the testator, Newton Bond, their grandfather. The testator had another son by his first marriage named William N. Bond, who also predeceased the testator, prior to the making of said will. William N. Bond was survived by a son, Boyd C. Bond, who, of course, is a grandson of testator. The record herein shows that the testator had only one grandson bearing the Christian name "William," such grandson being the plaintiff herein, William H. Bond. Paragraph "Fifth (2)" of the will describes the beneficiary of the devise made in said paragraph as, "my grandson, William N. Bond,"

The testator had no grandson bearing the Christain name "William" and the middle initial "N." The grandson, Boyd C. Bond, son of William *N.* Bond, is not named or provided for in the will of Newton Bond as written and probated, nor is his father, William *N.* Bond, son of the testator, named or mentioned therein as being the testator's son. The testator also left surviving him a minor son by a second marriage, named William Bond, who is named and provided for in paragraphs "Fifth (1)" and "Eighth" of the will.

Pursuant to the directions of the will, the probate court appointed W. W. Toler as executor of the estate of Newton Bond, but he subsequently resigned his office and an administrator of the estate with the will annexed was appointed in his stead by the probate court. The defendants herein are, respectively, the several beneficiaries named in the will of Newton Bond, the administrator of his estate and the heirs at law of Newton Bond, the testator. The petition alleges that there are conflicting claims to the estate of said Newton Bond under the provisions of the will, and that the administrator of testator's estate and the parties to the suit are in doubt as to the meaning and terms of the will; wherefore, the court is asked to enter a decree construing said will and determining the rights and duties of the parties thereunder.

The testimony discloses that the two sons of testator, namely, John C. Bond, father of plaintiff, and William *N.* Bond, father of Boyd C. Bond, died several years before the testator made his will. The testator's place of residence, for many years prior to his death, was the city of West Plains. Plaintiff left West Plains, the place of residence of his grandfather, the testator, when he was a young child about eleven years of age, and about fourteen years prior to the making of the will. The record shows that plaintiff, after leaving West Plains, had never returned to see or visit his grandfather, and had never at any time in his life made his home with the testator. There was some testimony, apparently offered by plaintiff for the purpose of showing testator's especial interest in, and affection for, plaintiff, to the effect that, while plaintiff was a very young lad, his grandfather had made to plaintiff some presents of small pecuniary value, consisting of toys, knives, shoes, etc., but that the grandfather had bestowed no similar gifts upon plaintiff's two brothers and two sisters. Plaintiff, in explaining the good feeling and affectionate relation which existed during plaintiff's early boyhood between him and the testator, testified: "He would always take me to town with him and buy me presents and things, and he always liked for me to be with him. I remember one time when he got me some little red boots, and he would get me knives and tops and things. Then he used to send me things when we went away from there (West Plains), even after we went to Texas, and I used to send him things sometimes."

R. S. Hogan, the scrivener who wrote the will and one of the attesting witnesses to its execution, was permitted to testify, over the objections of plaintiff, as follows: ' "Q. Did you know Newton Bond? A. Yes, sir. Q. Did you write the will in question here? A. Yes, sir. Q. At whose request did you write it? A. At his request. Q. Where was it written? A. At his house. Q. Did you take down the terms of the will? A. Yes, sir; he sent for me and I went over and made a pencil draft; I took down some notes and then had the will typewritten. Q. I will ask you whether or not you know if Newton Bond had a son named William N. Bond? A. Yes, sir. Q. Was he living or dead at that time? A. He was dead. Q. Do you know about how long he had been dead? A. About twenty-five years. Q. Did William N. Bond have any children? A. Yes, a son. Q. Do you know his son's name? A. Yes, sir, it was Boyd C. Bond. . . . Q. Did Boyd live with his grandfather? A. For some time. Q. Now explain to the court about that statement of Mr. Bond [testator] about what he wanted in his will you prepared with reference to Boyd. What was said? A. He called me down to the house, he was not able to sit up, and he told me that he wanted me to put in the will that he didn't want Mrs. Riley to have anything as she had already had her part. Q. Just tell about the disputed part. A. Well, he said in reference to John Boyd [Bond?] that he did not want him or his heirs to have anything, he had already had more than his share; then he said that he wanted the boy who lived with him to have part of his estate. As I understood his name at that time, his name was William Newton, named after him. . . . Well, he said that he wanted his grandson, William's son, to have part of the property, because he lived there with him and had always been good to him. Q. That clause in the will where you tried to draw the will to convey the property to Boyd C., or the son of William, was that the clause in which he meant to provide for him? A. Yes, sir. Q. Do you remember what the original pencil draft said? A. That it was to go to 'my grandson, the son of William N.' Q. What did you think the boy's name was at that time? What did you think his name was? A. I thought it was William N. Q. What do you know about Boyd having lived for a long time with Newton Bond? A. I know that he lived there for some time, but I don't know for how long. Q. Did he claim that for his home? A. Yes, sir, for a number of years. Plaintiff's counsel: I move the court that all of this witness's testimony be stricken out which relates in any way to statements of the testator, Newton Bond, or to any directions he may have given, for the reason that the will, and no other instrument, declares the intention of the testator, Newton Bond. The parol testimony is inadmissible to contradict the terms of the will. By the court: The

motion is overruled. Plaintiff's counsel: The plaintiff excepts to the ruling of the court. Q. Then you claim that this is not the will of Newton Bond? A. No, sir. Q. You say it is not what he wanted in some respects? A. Well, it is not what he meant in some respects. Q. Is this the will he made? A. Yes, sir, with some exceptions. Q. Is this the will he signed? A. This is the will he signed. . . . Q. How intimately were you acquainted with Boyd C. Bond? A. Not very intimately; I knew his mother and father before they were married, and saw the boy, off and on, all of his life. Q. How old was he when he left there? A. I don't know. Q. Do you know how old he is now? A. No, sir. Q. About how old? A. I should judge about thirty years. Q. How long has he been gone? A. About ten years. Q. Not longer than that? A. I don't think so.''

William Toler, who was named in the will as executor, was allowed to testify, over the objections of plaintiff, as follows: ''Q. Were you acquainted with Newton Bond? A. Yes, sir. Q. Prior to the time he made this will in question, did you have any conversation with him relative to his wanting Boyd to share in his estate? A. I can't remember that he called that name, he said Bill's boy all the time. . . . Q. In referring to the disposition of his property, what did he say he intended him to have? A. He said he wanted the boy to have some of his property; he said he stayed with him and helped him make most of what he had, that Carroll stayed with him when the others left. Q. Who did he mean when he said Carroll? A. He meant Bill. . . . Q. Did he say anything about this boy having lived with him? A. I don't remember; I don't know the children.''

At the close of all the evidence, the trial court entered the following finding and judgment:

''Now on this 14th day of November, 1923, this cause coming on to be heard, the plaintiff appears in person and by attorney, the defendants appear by their attorneys, both sides announce ready for trial; the defendant, William Bond, being a minor, R. S. Hogan was appointed guardian *ad litem* to represent him, the said William Bond, a minor; said guardian *ad litem* filed herein his written consent to act as such guardian, also filed his answer on the part of said minor, and it appearing to the court that all of the other defendants had been notified of the commencement and pendency of this suit by personal service and by publication, a jury being waived, the matters in controversy were submitted to the court; the court found the issues for the defendants: found under the fifth clause or paragraph of said last will of Newton Bond, deceased, that said will was intended to read, 'I give and bequeath to my grandson, Boyd C. Bond, son of William N. Bond, an undivided half interest in the west one hundred

ten feet (110) of Lot One in Block Twenty-seven in the original town, now City of West Plains, in Howell County, and State of Missouri, subject to the payment of any mortgage or incumbrance that may be on said property at my death.'

"It is therefore ordered and adjudged and decreed by the court that plaintiff take nothing under the last will and testament of Newton Bond, deceased; that the fifth clause or paragraph of the last will of the said Newton Bond should and does read, 'I give and bequeath to my grandson, Boyd C. Bond, son of William N. Bond, an undivided half interest in the west one hundred and ten feet (110) of Lot One in Block Twenty-seven in the original town, now City of West Plains, in Howell County and State of Missouri, subject to the payment of any mortgage or incumbrance that may be on said property at my death.' "

After unsuccessfully moving for a new trial, plaintiff was granted and allowed an appeal to this court.

Appellant assigns error in the admission of the testimony of the witnesses, William Toler and R. S. Hogan, the scrivener who wrote the will. He also claims that the decree or judgment of the trial court disregards the clear and true intent of the testator as expressed in his will and amounts to the making by the court for the testator **Ambiguity.** of a different will than that which the testator made and which the court is called upon to construe. It is unquestionably the established law, as contended by appellant, that the courts, whether trial or appellate, cannot, by construction, make a will for the testator, their province being to interpret the will and to ascertain therefrom the true intention and meaning of the testator, not to substitute their notions for those of the testator as to the proper disposition of his estate and the objects of his bounty. [RoBards v. Brown, 167 Mo. 447, 456.] Furthermore, the statute of this State (Sec. 555, R. S. 1919) requires of all courts that they "shall have due regard to the directions of the will and the true intent and meaning of the testator, in all matters brought before them." Such intent and meaning can best be ascertained by the court putting itself, so far as may be, in the place of the testator and reading the directions of the will in the light of the testator's environment at the time he made the will. If the true intent and meaning of the testator can be thus clearly ascertained by the court, then all technical rules of construction must give way. [Robards v. Brown, 167 Mo. l. c. 457; Murphy v. Carlin, 113 Mo. l. c. 117; Hurst v. Von De Veld, 158 Mo. l. c. 246.] When, however, upon a reading of the will in its entirety, any doubt or uncertainty arises as to the testator's true intention, then it is the general rule that extrinsic facts and circumstances are admissible in evidence to explain the language of the will, regardless of the nature of the am-

biguity, whether it be patent or latent, for in every case the court is entitled to be placed in possession of all the information which is available respecting the circumstances of the estate and family of the testator at the time he made the will, to the end that the court may be in the testator's situation, as nearly as may be, and may interpret and understand the will as if the testator were living. [McCoy v. Bradbury, 290 Mo. 650, 657; Willard v. Darrah, 168 Mo. 660, 668; Cox v. Jones, 229 Mo. 56, 62.]

Bearing in mind, therefore, the statutory mandate, imposed upon all courts of the State, that due regard shall be given to the directions of the will and the true intent and meaning of the testator, and mindful of the rule that "the best interpreter of a will (all its separate parts being considered) is the will itself" (Cox v. Jones, 229 Mo. l. c. 62), we look first to the entire will of Newton Bond to find therefrom, if possible, the true intent and meaning of the testator. In paragraph "Fourth" of the will, the testator clearly and indubitably manifests his intention that, having theretofore advanced to his son, John C. Bond, who had died before the making of the will, his share of the testator's estate, therefore the heirs of John C. Bond "shall take nothing more under this will." Appellant, William H. Bond, is a son and heir of John C. Bond, and hence falls within the class of kin which the testator, in the fourth paragraph of his will, clearly manifests the intent to exclude from his bounty by the positive direction that the heirs of John C. Bond "shall take nothing more under this will." In paragraph "Fifth (2)" of the will (under which appellant seeks the construction that he is the beneficiary therein named and intended), the testator expresses the intent to give "to my grandson, William N. Bond," an undivided half interest in certain real property in the city of West Plains. Appellant claims that, inasmuch as it is shown by the evidence herein that appellant is the only grandson of testator who bears the Christian name "William" and the surname "Bond," the description by the testator of the beneficiary intended to take under paragraph "Fifth (2)" of the will as, "my grandson, William N. Bond," can only refer to appellant and to no other person, and hence that there is no ambiguity in that clause or paragraph of the will. In seeking such construction of that paragraph of the will, however, appellant would have us wholly disregard and discard, as a mere mistake of the testator, the use and insertion by the testator of the middle initial "N." in describing or naming the beneficiary intended to take under paragraph "Fifth (2)." But while we are mindful that the early common law did not recognize a middle name or initial as a part of the name of an individual (19 R. C. L. 1328), such rule, as far as we find, seems to have been applied principally and almost exclusively to indictments and informations in criminal proceedings, and to

pleadings and process, or orders of publication, in civil actions, in which matters a mistake in, or omission of, the middle name or initial was deemed immaterial. We find no adjudicated case (and appellant has directed us to no case) wherein the rule has been applied to the beneficiaries under a will or testamentary instrument. We will assume, therefore, unless extrinsic facts and circumstances disclose a contrary intent of the testator, that the testator used the middle initial "N." designedly, and not by mistake, in describing and naming, or attempting to describe and name, the beneficiary intended by him to take under paragraph "Fifth (2)" of the will.

But assuming for the moment that paragraph "Fifth (2)" of the will, standing alone, can be said to manifest the intent of the testator that appellant, William *H.* Bond, is the beneficiary who is to take the devise made in said paragraph (as appellant contends such paragraph does), then we find said paragraph to be in conflict with, and repugnant to, paragraph "Fourth" of the will, which clearly and positively states that the heirs of John C. Bond (in which class of kin appellant falls) "shall take nothing more under this will." A cardinal rule in the construction of wills is that, "if possible, in accordance with the testator's general intention, the will should be so construed as to harmonize inconsistent and repugnant clauses or provisions, and give effect to each of them, but where two clauses are entirely contradictory, that clause should prevail which most nearly appears to be the intention of the testator as gathered from the rest of the will." (40 Cyc. 1416.) Mr. Schouler, in his recognized text on Wills (6 Ed.), vol. 2, pages 1031-1035, states the rule of construction thus: "A will should be construed as a whole to carry out testator's intention, and all parts should be compared with and read in light of the others, in an effort to harmonize all parts, and his whole plan considered, and every word given effect if possible. . . . The will should be so construed as to avoid inconsistencies and give effect to all parts of the will, and repugnant provisions should be so construed as to preserve testator's general intention. . . . A later clause in a will must be deemed to affirm, not to contradict, an earlier clause, if such construction can fairly be given. The effort here, and a natural one, is to reconcile the instrument in all its parts and make the disposition a consistent whole; for, in construing doubtful language that interpretation should be preferred which gives consistency to the whole will, rather than one which works inconsistency. . . . In short, a will is not to be read so as to contradict itself, if its apparent contradictions can be reconciled by bringing the various clauses together, and deducting a consistent interpretation from the whole context." "To interpret and to reconcile one clause of a will with another, where that can be done without straining the

words,  .  .  .  is the best mode of interpretation." [Cox v. Jones, 229 Mo. 1. c. 62.]

Applying the foregoing rule of construction to the will of Newton Bond, and endeavoring to harmonize and render consistent, each with the other, the paragraphs "Fourth" and "Fifth (2)" of said will, in order to give effect to the whole plan and general intent of the testator as gathered from the context of the entire will, and in view of the fact that paragraph "Fifth (2)" does not accurately or indisputably describe and name appellant, William *H.* Bond, as the beneficiary thereof by his full and correct name, including the correct middle initial, it seems evident to us that the beneficiary whom the testator intended to take the devise under paragraph "Fifth (2)" was not to be an heir of John C. Bond; at least, a considerable doubt arises in our minds, because of the language of the entire will, that the testator intended that appellant, William *H.* Bond, who is an heir of John C. Bond, should take the devise under paragraph "Fifth (2)" of the will.

Furthermore, in the construction of a will the court always starts with the presumption that the testator intended to dispose of his whole estate by the will; or, in other words, the presumption is against partial intestacy of the testator where the will, as a whole, indicates the intent of the testator to make a complete disposition of all of his property, the reason of the presumption being to prevent the incongruous situation of the estate passing partly by will and partly by descent. [RoBards v. Brown, 167 Mo. 1. c. 457; Watson v. Watson, 110 Mo. 1. c. 171; Willard v. Darrah, 168 Mo. 1. c. 670, 671.] "The presumption is that a testator intended to dispose of his entire estate and not to die intestate either as to the whole or as to any part thereof, and the will should be so construed unless this presumption is clearly rebutted by the provisions of the will or by evidence to the contrary." [40 Cyc. 1409.] It seems apparent to us, from an examination of the will in its entirety, that the testator intended to dispose of all his property and estate by the will. He expressly names therein every one of his children, whether living or deceased, referring to each of them by the specific designations "my son" or "my daughter," save and except his deceased son, William *N.* Bond. In the second and third paragraphs, respectively, of the will, he names his daughter, Josephine Riley, and his son, Carroll J. Bond, and, because they have theretofore been advanced their respective shares of the estate, the testator provides that they shall take nothing more under his will. Likewise, in the fourth paragraph of the will, the testator names his deceased son, John C. Bond, and, because he has theretofore been advanced his share of the estate, the testator provides that his heirs shall take nothing more under the will. In paragraph "Fifth (1)" of the will, the testator names, and makes

provision for, his minor son by the second marriage, William Bond.
In the sixth paragraph of the will, the testator names and provides
for his two daughters, Ellen Haynes and Annie Arnett. In the
eighth, or residuary, clause of the will, apparently in order to make
certain that no part of his estate shall pass by descent, the testator
provides that whatever remains of his estate (other than the property
thereinbefore named) shall pass to his minor son by the second mar-
riage, William Bond, and his mother (testator's second wife), Per-
lina Bond, in equal shares. Nowhere in the will does testator name
his deceased son by the first marriage, William *N.* Bond, by the desig-
nation of "my son", or name the heir and descendant of such de-
ceased son, Boyd C. Bond, unless it be that testator intended to
name and provide for the heir and descendant of his deceased son,
William *N.* Bond, in paragraph "Fifth (2)" of the will by the de-
scription or designation, "my grandson, William *N.* Bond." Unless
it was intended by the testator that the descendant of his deceased
son, William *N.* Bond, is to take as the beneficiary under paragraph
"Fifth (2)" of the will, then the will does not name or provide for
the descendant of such deceased son, and Boyd C. Bond, the son and
descendant of testator's son, William *N.* Bond, takes a share of tes-
tator's estate as a pretermitted heir under the statute of this State
(Sec. 514, R. S. 1919). That Boyd C. Bond, son of William *N.* Bond.
and grandson of the testator, shall take by descent as a pretermitted
heir is not in consonance with the apparent purpose and intent of
the testator (as disclosed by the entire will) to dispose of all his
property by the will and to permit no part of his estate to pass by
descent, and is opposed to the presumption against partial intestacy
of the testator.

Is there a latent ambiguity in the description of the beneficiary
who is to take the devise under paragraph "Fifth (2)" of testator's
will? Or, is the description of the beneficiary, as contained in the
written will, equivocal? We think so. It seems clear that the testa-
tor intended the devise to go to his grandson, as evidenced by the
use of the words, "my grandson." Both claimants to the devise,
viz., the appellant, William H. Bond, and respondent, Boyd C. Bond,
are grandsons of the testator, and hence both fall within the descrip-
tion of relationship of the beneficiary to the testator. Neither claim-
ant, however, bears the full name and middle initial of the beneficiary
as named and described by the testator in the will, to-wit, William *N.*
Bond. Therefore, as respects the two claimants of the devise, the de-
scription of the beneficiary contained in paragraph "Fifth (2)" of
the will is partly correct and partly incorrect. It is correct as to
the relationship of the beneficiary to the testator, namely, "my grand-
son;" it is not correct as to the full name and middle initial of the
beneficiary, for neither claimant bears the full name, "William *N.*

Bond.'' The environment and surrounding circumstances of the testator at the time he made his will render us, no great aid in arriving at the identity of the true beneficiary who was intended by the testator to take the devise. While there is some evidence, although very slight, tending to show that appellant, William *H.* Bond, was favored by his grandfather during the years of his early childhood by being made the recipient of a few presents of small pecuniary value, such as toys, knives, shoes, etc., yet the evidence further shows that appellant left the place of residence of testator when he was but eleven years of age and about fourteen years before the testator made his will; that appellant had never seen or visited his grandfather during the fourteen years after he left West Plains, where his grandfather resided; and that appellant had never, at any time in his life, made his home with the testator. On the other hand, there is some evidence that testator's grandson, Boyd C. Bond, had lived with the testator for some time, and claimed the home of the grandfather as his home for a number of years. But, as we have said, the evidence respecting the environment of the testator at the time he made his will, aids but little, if at all, in solving the identity of the beneficiary intended by testator to take the devise, and a doubt still remains respecting the true person intended by testator to take the devise. Such being the situation, did the learned trial chancellor err in admitting the testimony of the witnesses, Toler and Hogan, the latter being the scrivener who wrote the will, as to the declarations of intention made by the testator before, or at the time of, the execution of the will?

We are well aware that courts are always chary and extremely cautious, and rightly so, in admitting direct proof *dehors* the will of what the testator actually intended to provide by his will, and especially respecting the testator's declarations of intention made at, or prior to, the time of the execution of the will. As a general rule, the declarations of a testator are rarely, if ever, admissible for the purpose of impeaching the clear and unambiguous language of the will. [Neibling v. Methodist Orphan's Home Assn., 286 S. W. l. c. 65.] However, there are instances, as shown by the adjudicated cases, where such evidence is deemed admissible, not for the purpose of establishing an intention contrary to that expressed on the face of the will, but in aid of the intention of the testator as ambiguously or inaccurately expressed upon the face of the will. Says Mr. Schouler, in his standard text on Wills (6 Ed.) vol. 2, pages 1068, 1069: ''In the first place, and most positively, extrinsic evidence of intention (or parol evidence, as it is often called), is admissible to determine which of two or more persons or things was intended under an equivocal description.'' Again, after discussing the adjudicated cases bearing on the subject, the same learned text-writer arrives at this conclusion: ''The two classes of cases, then, in which direct evi-

dence *dehors* the will appears admissible to show the testator's intention, are these: (1) Where the person or thing, the object or subject of the disposition, is described in terms which are applicable indifferently to more than one person or thing. (2) Where the description of the person or thing is partly correct and partly incorrect, and the correct part leaves something equivocal. Or, perhaps, to take a broader view of the subject, extrinsic evidence of intention may be admitted wherever the instrument is insufficiently expressed or applied in terms so as to raise a doubt of the object or subject intended, and, in order to give the disposition effect, that doubt must be cleared and the insufficiency supplied. On the other hand, such extraneous proof should be ruled out whenever its tendency is to establish an intention different in essence from what the will expresses on its own face; for where admissible it is in aid of the testator's expressed intention, not against it." [2 Schouler on Wills (6 Ed.) p. 1075.]

Another recognized text-writer thus announces the rule: "When the evidence of extrinsic circumstances is all in, it may appear that a description in the will which was intended by the testator to apply to one object or thing is applicable, with more or less certainty, to several objects or things. This is a case of latent ambiguity, and parol evidence is then received to ascertain which person or thing was intended by the testator. Where the ambiguity is latent, it is created by evidence of extrinsic facts, and the same evidence is admissible to remove it. But such evidence is not direct evidence of intention, and, if the rule in relation to the reception of parol evidence to solve latent ambiguities permitted the introduction of such evidence only, it would not require a separable discussion, as it would be synonymous with the rule that extrinsic facts are always admissible to explain the language of the will, regardless of the nature of the ambiguity, whether it be patent or latent. The principle goes much further than this. It is not to be confined to the admission of facts appertaining solely to the circumstances of the testator, and which merely tend to show the meaning of his words. Under it evidence showing or suggesting a direct inference of intention as to the things or objects disposed of in the will, including the testator's declarations of intention uttered at the execution of the will, and, according to some of the cases, subsequently thereto, are received to assist the court in disposing of the latent ambiguity, by showing which of several persons or things answering to the description was intended by the testator. Hence, it will be seen that there may be, and usually is, an essential and radical difference between the evidence which raises or creates the latent ambiguity, i. e., proof of extrinsic circumstances of the case, and the evidence which removes it or explains it, and which may be declarations of the intention of the testator as well as

evidence of circumstances. . . . Thus, if a benefit is claimed by several persons, all answering the description of the will in one or more material particulars, though none of them answering to it perfectly and accurately in every particular, extrinsic evidence is received, including expressions of intention." [2 Underhill on Wills, sec. 910, pp. 1398-1400.]

The rule thus announced was applied by this court, and parol evidence of the scrivener respecting testator's declarations of intention was held to be admissible, in Willard v. Darrah, 168 Mo. 660, 671. In that case, a devise was made by testator to "my well-beloved nephews, John and William Willard." It appeared from extrinsic evidence that the testator was survived by two grandsons named John and William Willard, and by two grandnephews, also named John and William Willard. Testator, however, had no nephews bearing those names. The two grandsons were not named or provided for in the will, unless the testator intended to name and provide for them by the clause of the will which described the beneficiaries thereof as "my well-beloved nephews, John and William Willard." The testimony of a witness, one Edwards, the scrivener who wrote the will, was to the effect that he drew the will at the request of testator, who directed that the devise be given to the grandchildren, John and William Willard, but by mistake he (the scrivener) wrote the word "nephews" instead of "grandchildren." The evidence of the scrivener was rejected by the trial court. Said BRACE, P. J., speaking for this division of this court in that case: "As to each of these sets of brothers the description contained in the will is partly correct and partly incorrect. It is correct as to the Christian and surnames of each set; it is correct as to neither in the superadded description of relationship to the testator. . . . The description of the persons is partly correct and partly incorrect, leaving something equivocal. The description does not apply precisely to either of these two sets of brothers, but it is morally and legally certain that it was intended to apply to one or the other, thus bringing the case within the rule established by the second class of cases in which direct or extrinsic parol evidence, including expressions of intention, is admissible. Such evidence was therefore admissible in this case in order to solve a latent ambiguity produced by extrinsic evidence in the application of the terms of the will to the objects of the testator's bounty, to prevent the fourth clause of the will from perishing, and obviate a partial intestacy of the testator. Its effect is not to establish an intention different in essence from that expressed in the will, but to let in light by which that intention, rendered obscure by outside circumstances, may be more clearly discerned, and the will of the testator in its entire scope effectuated according to his true intent and meaning. Hence, we conclude that

the court erred in rejecting the evidence of the scrivener Edwards, and in holding that the plaintiff was not named or provided for in the will of his grandfather."

So, in Gordon v. Burris, 141 Mo. 602, it appears that a granddaughter was named in the will of testatrix as Lucy May Gordon, whereas her true name was Mary Josephine Gordon. It was ruled therein that the incorrect description of the granddaughter was a latent ambiguity or equivocation in the will, and extrinsic evidence, consisting of what was said between testatrix and the lawyer who drew the will respecting the name of the beneficiary, was admitted to remove the ambiguity and to prevent the granddaughter from claiming as a pretermitted heir.

In Covert v. Sebern, 73 Iowa, 564, a testatrix devised certain property to "my stepson, H. S. Covert." She had no stepson whose initials were "H. S.," but had a stepson named John Harvey Covert, who was usually called "Harvey." Held, upon such facts being made to appear, that there arose a latent ambiguity in the description of the beneficiary, and therefore the parol evidence of the scrivener to the effect that testatrix directed him to write the will so as to give the property to her "stepson, Harvey," and that he supposed the initials of Harvey's name were H. S., and he therefore wrote those initials into the will to describe him, was admissible to explain and remove the latent ambiguity. To like effect are Gallup v. Wright, 61 How. Prac. (N. Y.) 286, and Morse v. Stearns, 131 Mass. 389.

We are of the opinion that the testimony of the witnesses, Toler and Hogan, respecting the declarations, or expressions, of intention of the testator was admissible herein to remove the latent ambiguity or equivocation in the description of the beneficiary intended by testator to take under paragraph "Fifth (2)" of his will, and to aid the court in identifying such beneficiary. Our construction of the will of Newton Bond accords with that of the learned trial chancellor, for we believe, from a consideration of the will in its entirety, and the extrinsic evidence admitted in aid of the testator's intention, that the testator intended his grandson Boyd C. Bond, son of William N. Bond, and not the appellant, William H. Bond, to take as the beneficiary of the devise under paragraph "Fifth (2)" of the will.

We are of the opinion that the judgment of the circuit court was right and should be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.