238 S.W.2d 893 (1951)
MERCANTILE-COMMERCE BANK & TRUST CO. et al.
v.
BINOWITZ et al.
No. 28158.
St. Louis Court of Appeals, Missouri.
April 17, 1951.
Rehearing Denied May 18, 1951.
*894 Thompson, Mitchell, Thompson & Douglas and Samuel A. Mitchell, and William G. Guerri, all of St. Louis, for Mercantile-Commerce Bank and Trust Co., Co-Executors of the Estate of Hyman A. Binowitz, Deceased, plaintiff-respondent.
Barton N. Grant, Sr., Milton F. Napier, St. Louis, for Estelle Binowitz, Co-Executor, plaintiff-respondent.
A. B. Frey, St. Louis, for Charles and Samuel Binowitz and Leo N. Levi Memorial Hospital Ass'n, defendants-respondents.
Karol A. Korngold, St. Louis (Arthur H. Slonim, Frey & Korngold, St. Louis, of counsel), for Charles Binowitz and Abraham B. Frey, Co-Executors of the Estate of Morris L. Binowitz, Deceased, defendants-respondents.
Robert Mass, St. Louis, for Jewish Children's Home of St. Louis, Inc., defendant-respondent.
Noah Alter, Denver, Colo., for Jewish Consumptive Relief Society, defendant-respondent.
Barton N. Grant Sr., Milton F. Napier, St. Louis (Louis E. Zuckerman, St. Louis, of counsel), for Shirley M. Binowitz Soule, defendant-appellant.
HOUSER, Commissioner.
This is an action under the Declaratory Judgments Act, R.S.1949, § 527.010 et seq to obtain a construction of the last will and testament of Hyman A. Binowitz, who died February 10, 1948, leaving as his survivors his widow, Estelle Binowitz, and two children of the marriage, Shirley May Binowitz Soule, born May 3, 1926, and Hubert E. Binowitz, born January 2, 1933.
The suit was brought by the Mercantile-Commerce Bank and Trust Company and the widow, as co-executors under the will, during the course of the administration of the estate in the probate court. All persons interested in the estate were joined as party defendants. The allegations of the petition were not controverted. All of the defendants joined in the prayer that the court interpret and construe the will. The cause was submitted to the trial court by consent on the pleadings, without the taking of any evidence.
The will consists of 13 typewritten pages, divided, after the preliminary recitals, into 16 items, sections, sub-paragraphs and articles. Items I and II provide for the payment of funeral expenses, debts and for burial grounds. Item III bequeaths certain specific articles such as automobiles, household furnishings, etc., to the widow, while Item IV defines the term "survive" as used in the will. In Item V three $100 specific bequests to charities are made. Item VI terms the remainder of his property "residuary estate".
Item VII provides: "If all of my children, born of my marriage with my wife, hereinafter for brevity called `my children', and all of their lineal descendants, shall predecease me, but not otherwise, and my wife alone shall survive me, then I give, devise and bequeath my residuary estate to my wife, absolutely, and in fee simple."
Item VIII, which provoked the filing of this action, commences with this language: "If any of my children, or any of *895 their lineal descendants, shall survive me, then I give, devise and bequeath my residuary estate, (the same being hereinafter called my `trust estate'), to my wife, Estelle Binowitz, and the Mercantile-Commerce Bank and Trust Company in St. Louis, a Missouri banking corporation, as co-trustees, and to their successors in trust, for the following uses, trusts and purposes, and in accordance with the following terms, provisions and conditions, towit:" whereupon nine separate sections of the item follow.
Section 1 begins: "If my wife shall survive me, then I direct the trustees to pay to my said wife, for her own use and behoof, until she shall remarry, but if she shall not remarry then for and during the balance of her natural life, the entire net income of said trust estate, unless said trust estate shall terminate sooner under Section 6 of this Item." Section 1 concludes by authorizing the trustees in their discretion to encroach upon the principal of the trust estate up to $2500 in any one calendar year at "any time, or from time to time prior to the remarriage of my wife" if the net income from the trust estate is not sufficient for her necessary expenses, "even if such encroachment finally consumes the entire principal of said trust estate; provided, however, that no right of encroachment shall exist if and after my wife shall remarry."
Section 2 provides: "(a) If my wife shall remarry, then upon such remarriage I direct that the trustees set apart one-third (1/3) of said trust estate and to pay to my wife the net income thereof for and during the remainder of her natural life, as and when the same is received. (b) In that event, I direct the trustees to set apart and divide the remaining two-thirds (2/3) of said trust estate into as many approximately equal shares as shall provide one such share for each of my children as shall survive the remarriage of my said wife, and one such share, collectively, for the lineal descendants surviving such remarriage, of each of my children as shall predecease such remarriage, they to take per stirpes."
Section 3 provides: "Upon the death of my wife, I direct the trustees to set apart and divide that one-third (1/3) of said trust estate which is directed to be set apart in Section 2(a) hereof, into as many approximately equal shares as shall provide one such share for each of my children as shall survive my wife, and one such share, collectively, for the lineal descendants surviving my wife, of each of my children as shall predecease my wife, they to take per stirpes."
Section 4 directs that shares of the trust estate set apart under Sections 2(b) and 3 "or under any other Section hereof" to the lineal descendants of deceased children of testator should not be held in trust, but be distributed forthwith to such lineal descendants or their guardians, free from trust.
Section 5, subsection A, directs that shares of the trust estate set apart under Sections 2(b) and 3 "or under any subdivision hereof" for his children be distributed "forthwith, free from trust, to each of my children as is entitled to a share under any Section hereof, one-half (½) of such share, if and when such child shall attain the age of twenty-three (23) years, and the remaining one-half (½), if and when such child shall attain the age of twenty-eight (28) years, but until such distributions are made the trustees shall hold such shares or parts of shares pursuant to the terms hereof."
Subsections B, C and D direct the trustees to pay to any child for whom the trustees are holding any share, the net income of such share, except that if the child be a minor the trustees shall either expend the net income for the benefit of the minor or pay it to the guardian of the minor; vest the trustees with discretionary power to encroach upon the principal of any share of the trust estate held for any child to the extent of not to exceed 15% of the principal of such share in any one calendar year for the necessities of said child; and provide for the devolution of the shares of the children in the event they die "prior to receiving" any share or shares of said trust estate to which he or she is entitled *896 (such shares to go, free of trust, to the then surviving lineal descendants of such deceased child, or, if there be none, then to the other children or their lineal descendants who shall survive such deceased child).
Section 6 provides for the contingency in which all of testator's children and their descendants die while any property is still being held in trust, in which event the trustees are directed to pay the balance of the trust estate to testator's wife if she survive such termination, but if not then to testator's brothers Charles, Morris and Samuel if they survive such termination, but if not, then to their lineal descendants.
Section 7 grants full and complete powers, authority and discretion to the trustees, and fixes upon them duties in the administration of the trust, while Sections 8 and 9 provide for successor trustees and specify what trustees need give bond.
Item IX provides for the situation should testator's wife and all his children and their lineal descendants die before testator dies, giving the residuary estate in that case to testator's brothers, if they survive testator, otherwise to their lineal descendants.
Item X directs that the provisions "herein made for my wife shall be in lieu of her dower, homestead, and absolute property, but not in lieu of widow's allowance for one year's maintenance."
Item XI directs the payment of all estate and inheritance taxes out of the residuary estate prior to carrying out the provisions of Item VIII. Item XII appoints Estelle Binowitz guardian of the children, provides for successor testamentary guardians, and dispenses with their giving bond. Item XIII refers to a partnership business; Item XIV declares that testator received legal advice at or before the execution of the will; Item XV names Mercantile-Commerce Bank and Trust Company and Estelle Binowitz co-executors and provides for successor executors. Item XVI gives special powers to the executrix, including power of sale of property of the estate without court order.
The will contains no provision for the distribution of the remainder of the trust estate after the termination of the widow's life estate upon her death without having remarried, nor does it provide in terms for the situation should the widow renounce the will.
Testator left no grandchildren.
The widow, Estelle Binowitz, has not remarried, but on February 8, 1949 she filed in the probate court a renunciation of the provisions made for her in the will and an election to take her share of the estate of her husband according to the laws of descent and distribution.
In this case it happens that the beneficiaries of the trust are the same persons as the heirs at law so the question for decision is whether Shirley M. Binowitz Soule and Hubert Irwin Binowitz, children of the testator, take their shares in the estate of their father under the terms of the testamentary trust, or free from trust.
The trial court determined that they take under the trust, finding that it was the intention of testator to create a trust for their benefit notwithstanding the failure of testator to mention in his will the contingency of renunciation of the will by the widow. The daughter, Shirley, has appealed from the judgment of the trial court.
Appellant contends that the will created a life estate in the widow determinable on remarriage, death or renunciation of the will, with no remainder over provided for; that the will is plain and unambiguous and since no remainder over was provided for in the will the court cannot supply the omission by construction; that the trust provisions are applicable only in case the widow dies after having remarried; that no remarriage having occurred, and she having terminated the life estate by renunciation and election, the children take the balance of the estate free from trust, as if the testator had died intestate.
The duty of the court in this case is to ascertain the true intent and meaning of the testator. R.S.Mo.1949, *897 Section 468.620. If his intention as expressed in his will is unambiguous, we may not reform it, Cockrell v. First Nat. Bank of Kansas City, 357 Mo. 894, 211 S.W.2d 475; if uncertain, we may not speculate on it; nor can we write a new will under the guise of construction. Mississippi Valley Trust Co. v. Palms, Mo.Sup., 229 S.W.2d 675. In other words, our function is that of construction, not reconstruction, of the will.
In ascertaining that intention, we cannot take a narrow view and scrutinize one part to the exclusion of other portions of the will. We must look "at the four corners"at the entire instrumentand give all of its terms and provisions a fair and reasonable interpretation. English v. Ragsdale, 347 Mo. 431, 147 S.W.2d 653.
When a man undertakes to perform the solemn act of writing his last will and testament the law presumes, in the absence of language showing a contrary intention, that he intends thereby to dispose of all of his property. There is a presumption against partial intestacy. The presumption should be employed by a court in its task of interpretation where it is consistent with the expressed intention of the testator, but of course is unavailable in the absence of a provision purporting to dispose of the whole estate, Riesmeyer v. St. Louis Union Trust Co., Mo.Sup., 180 S.W.2d 60, or where the provisions of the will fail to effectuate the intention not to die intestate as to any of his property, St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W.2d 344.
The general intention of the testator to make a complete disposition of property, if discernible upon a broad view of the will in its entirety, may be allowed weight in determining the meaning of a particular devise which, considered by itself, might lead to a conclusion of partial intestacy. Burrier v. Jones, 338 Mo. 679, 92 S.W.2d 885; Watson v. Watson, 110 Mo. 164, 19 S.W. 543.
A further canon of construction for our guidance requires courts to so construe wills as to give operative effect to every clause and portion of the will where reasonably possible. Humphreys v. Welling, 341 Mo. 1198, 111 S.W.2d 123.
A consideration of Item VIII, Sections 1, 2 and 3, alone would impel the conclusion that it was the intention of the testator to carve out a life estate with a limitation over on one and only one contingency, remarriage, and that as to all other situations and persons it was the will of the testator to die intestate.
Looking at the will in its entirety and from the four corners, however, the general intention of the testator to control the devolution of all of his property in all conceivable circumstances is manifest, and drives us inevitably and inescapably to the conclusion that he did not intend to die intestate as to any of his property.
It is a lengthy, involved, and complicated document 13 typewritten pages in length. It was drawn by a lawyer. Its language is "lawyerish", full of technical terms such as "per stirpes", "common catastrophe", "residuary estate", "encroachment", "lineal descendants", "share and share alike", "fee simple", etc. It is comprehensive in its scope, carefully thought out, dispositive, final, broad in its intendment. It is not the type of instrument which a man would adopt to carve out a life estate and provide for a remainder over on a single contingency.
Hyman A. Binowitz, moved by a strong sense of obligation to his wife, set up a trust in the bulk of his property providing for the lifetime of his widow the entire net proceeds of the trust. He was so intent upon properly providing for her to the limit of his resources that he authorized the disbursement not only of the entire net income but also the expenditure of all of the principal, if necessary, to maintain her. At the time he made this will his daughter was 16 and his son 9 years of age, both dependent upon their parents, each at a period of life when the need for motherly care and attention was at its height. Doubtless it was the thought of the testator, in channeling all of the income to the mother of these children, that so long as she remained unmarried she could and would use the proceeds *898 of the trust properly to maintain and provide for the children, as well as for herself, according to their needs, so that there would be no necessity of providing separately for them. The provision that upon remarriage she thereafter should receive the income from only one-third of the property and that the income from the other two-thirds should be appropriated directly to the children indicates that while contemplating that her financial needs upon remarriage would be met principally by her husband, testator nevertheless wanted his widow to continue to receive something from his bounty, and shows clearly testator's intention to provide the children with an independent source of income in the event of his widow's remarriage, when her affections and attention would no longer be lavished exclusively upon the children, and when a stranger to the blood might influence her in the making of expenditures on behalf of his children.
A general residuary clause is ordinarily considered one of the hallmarks of an intention to dispose of all of one's property. While this will contains no general "catch-all" residuary clause, as did the will in the Riesmeyer case, supra, it does contain four residuary clauses which take effect in certain limited eventualities, and which lend great weight to the view that the testator thought he was disposing of everything when he executed this document. The residuum is disposed of as follows: (1) in case all his children and their descendants predecease testator, everything is left outright to his widow in fee, without any imposition of a trust. (2) In case all his children and their descendants survive testator but die while the property is still being held in trust, everything is left to his widow. If she is not then living, it goes to his three brothers, share and share alike. If any of them is not living, it goes to the lineal descendants of the deceased brother, per stirpes. (3) In case his wife and all his children and their lineal descendants predecease testator, everything is left to testator's three brothers, share and share alike, if they survive him, but if any of them do not survive testator, the share goes to the lineal descendants of the deceased brother, per stirpes. (4) In case the children and wife survive testator, the income from all the estate goes to the widow for life, but upon remarriage, the income from one-third of the estate continues to go to her, and the income from the other two-thirds of the estate goes to the children, or their descendants, and if the widow then die, the one-third from which she has been enjoying an income goes to the children or their descendants, per stirpes. Anything that goes to the children is to be distributed to them, free from trust, one-half thereof when the child attains age 23, the other one-half upon attaining age 28.
The will contains a common catastrophe clause.
It contains numerous provisions indicating the concern testator felt for his children. In Item III they are named as contingent legatees of certain specific personal property. In Item VIII the very existence of the trust estate itself is predicated and conditioned on the survival of the children after the death of the testator. The setting aside of the benefits from two-thirds of the estate upon the remarriage of the widow; their receipt of the other one-third outright upon her death after remarriage; the provision that the trust should end as to one-half the fund due the children at age 23 and as to the balance at age 28; the provision for them while minors as expressed in Item VII, Section 5, Paragraph B; the power of the trustees to encroach upon the principal for the children's benefit under Item VIII, Section 5, Paragraph C; the provisions for the payment of funeral expenses of the children under Item VIII, Section 5, Paragraph D; the provisions for the children to take from each other if they die without lineal descendants; the designation of the daughter as successor individual co-trustee upon the inability of his widow to act as co-trustee; the appointment of a testamentary guardian and the provision for a successor guardian for the person and estate of the children during their minorities; and the naming of the daughter as successor co-executor upon *899 the inability of her mother to act as coexecutor, all bespeak the tender solicitude of testator for the welfare and benefit of his children.
Having had counsel in the preparation of this will, and in view of the presumption that every man knows the law, we must take it for granted that the testator knew that he could not take from his wife her common law right to renounce the will and take a child's part of his estate, in which case all of his carefully laid plans for the devolution of his estate would be upset. The will shows on its face that the testator had carefully considered many possible combinations of circumstances of births, deaths and survival of the various members and branches of his family. His concern for them in these several contingencies is manifest. He apparently attempted to cover all possibilities, and although the will contains no provisions in two contingencies (death of the widow unmarried, or renunciation of the will and election to take a child's part) there is nothing in the lengthy document to indicate any intention not to dispose of the remainder by will upon the happening of these contingencies. There are no words indicating an intention of partial intestacy. On the contrary the words used express the opposite intention, and in that event, the presumption against intestacy applies fully. Gunn v. Yancey, 225 Mo.App. 1231, 33 S.W.2d 1029.
We cannot attribute to such a careful planner a definite intention not to provide for the obvious possibility that his widow might die without having remarried. It is clear that there was an unintentional and inadvertent omission to provide for the passage of his property in this event.
In the face of Item VIII, Section 5, Paragraph A, wherein testator indicates his desire to impress the trust upon funds coming into the hands of the children until they attain the minimum age of 23, and thereafter as to one-half the funds until they reach age 28, shall we profoundly declare that he wanted to die intestate as to these children, and ignore his written directions, or shall we so construe this will as to enforce his known desires with respect to the protection of his children against the possible dissipation of their inheritances in their early twenties? We think it is our duty to construe this will, in the light of all the foregoing considerations, so as to give operative effect to this paragraph of his will.
Our conclusion is that it was the intention of the testator, in the event of his widow's death without having remarried, that the trustees set apart and divide the corpus of the trust estate into approximately equal shares so as to provide one such share for each of the children surviving the death of the widow, the same to be distributed to them, free from trust, forthwith, one-half upon their attaining age 23 and the other one-half upon their attaining age 28, and in the meantime to be administered by the trustees under the terms of the testamentary trust.
The same interpretation is required in the circumstance of renunciation and election by the widow while she remained testator's unmarried widow, for all of the parties to this litigation concede that the renunciation by the widow and her election to take a child's part was the legal equivalent of her death; that her election terminated her life estate, and that the will must be interpreted as if it contained no provisions for her. In such case provisions in her behalf must be disregarded, but the intention of the testator as to others must be carried out as nearly as possible. St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S.W.2d 493; Lilly v. Menke, 143 Mo. 137, 44 S.W. 730.
We recognize that this construction involves the transposition of terms employed in the will and the supplying of words not found therein, but this may be done in a proper case in order to effectuate the intention of the testator as collected from the context, Nichols v. Boswell, 103 Mo. 151, 15 S.W. 343, and to prevent the incongruous situation wherein part of the estate passes by will and part by descent, Chapman v. Chapman, 336 Mo. 98, 77 S.W.2d 87; Bond v. Riley, 317 Mo. 594, 296 S.W. 401. It may be done where there *900 is an inadvertent omission of words, "which defect destroys his otherwise evident purpose", Schee v. Boone, 295 Mo. 212, 243 S.W. 882, 884.
In Baker v. Grossglauser, Mo.Sup., 250 S.W. 377, 378, after devising a life estate to his wife, and at her death to his daughter Elizabeth, testator provided that at his daughter's death: "I give, devise and bequeath to her three children * * *." It was held that through the palpable error of the scrivener the words "my estate" were omitted after the word "bequeath" and the court supplied the missing words.
In arriving at this conclusion we have not overlooked the decision in Crowson v. Crowson, 323 Mo. 633, 19 S.W.2d 634, on which appellant places her chief reliance. In that case the will provided, 323 Mo. at page 636, 19 S.W.2d at page 636:
" * * * First. I will and bequeath to my wife all my real and personal propertyafter paying all my just debts to be held in trust by her during her widowhood or lifetime, for her support and the support and education of her children. If she marries again she is to have her lawful dower and the remainder to be divided between my younger children, Edmond, Mary, and Ruth except one dollar each to my older children Eugene L., Jonathan and Egbert. I hereby appoint my wife as executrix to carry out this will. * * * " The older children were by testator's first wife who had died. They were grown, out in the world working for themselves and established in business. The younger children, by his second wife, were 8, 5 and 2 years of age. The second wife died without having remarried. In a suit to construe the will, the older children contended, as appellant here contends, that the testator made no disposition of the reversionary interest in the property in the event of his widow's death without remarriage, and that therefore they should share the reversionary interest under the laws of descent. The Supreme Court, through Henwood, C., held that testator died intestate as to "the remainder"; that the presumption against partial intestacy was of no avail, because the language of the testator was complete, plain, unequivocal, and the court cannot give it a different meaning for the purpose of carrying out a conjecture or hypothesis as to the intention of the testator, or write a new will for him. The court said, 323 Mo. at page 637, 19 S.W.2d at page 637: "In so far as the testator expressed his intention, he did so plainly and unequivocally, and, in our opinion, there is nothing in the language used, nor the surrounding circumstances, to justify the conclusion that he intended to say more." While the Crowson case strongly supports the position of appellant, we do not regard it as controlling in the case at bar, because of the essential difference in the expression of the intention of the testators in the two cases, as reflected by the provisions of their respective wills. In the Crowson case the will was short, simple and to the point; there were no residuary clauses, no intricate system of devolution of property under numerous contemplated contingencies, no provision for the holding of property in trust for Edmond, Mary and Ruth under any circumstances, and no elaborate demonstration that the testator was purporting to dispose of the whole estate, all in high contrast to the situation existing in the case at bar. The Crowson will was plain and unambiguous. Testator did not go far in expressing his intention. There was one short paragraphnot 13 pages from the context of which a general intent negating partial intestacy is plainly discernible.
In Tillerson v. Taylor, 282 Mo. 204, 220 S.W. 950, the will provided:
" * * * I give and bequeath unto my esteemed wife, Edna Montgomery, all my property, both real and personal, that remains after my debts are paid, to have and to hold the same and enjoy during her widowhood or so long as she remains my widow.
"If she remarries or in the event of her remarrying again, I desire that all the property should be divided equally between my brothers and sisters and my wife and her brothers and sisters all sharing alike and equal with my wife. * * *" *901 The widow, Edna, died without remarrying, leaving the remainder in her property to Julia Taylor. The collateral heirs brought a suit to partition the property. Julia Taylor intervened and set up her title to the property through Edna, and the question was raised whether Edna took a fee simple title subject to defeasance by remarriage, or whether she took only a life estate, determinable by remarriage or death. The court had this to say with respect to the contention that if given only a life estate intestacy would result as to the remainder of the estate if she did not remarry, 220 S.W. loc. cit. 951: "* * * The law is not that an intestacy would happen in the contingency stated; or, to speak more precisely, it does not happen always if there is no second marriage. A devise over, like the one to the brothers and sisters of Joseph and Edna Montgomery in case she married, has been held to take effect at the death of the widow as well as in the contingency named. 1 Jarman, Wills (6th Bigelow's Ed.) pp. 759, 760; Underhill v. Roden, 2 Ch.D. 496; Luxford v. Cheeke, 3 Lev. 125; Gordon v. Adolphus, 3 B.P.C.Toml. 306; Frey v. Thompson, 66 Ala. 287. In applying or refusing to apply that rule, and every other affecting the interpretation of wills, the intention of the testator is sought in order to give effect to it, and slight differences of phraseology may determine the court to hold in one case the intention was for the remainder over to take effect only in the contingency of a second marriage, and in another case that the intention was for it to take effect in that contingency or, if the widow remained single, at her death. 1 Jarman, Wills (same edition) p. 777, note."
In Winget v. Gay, 325 Mo. 368, 28 S.W.2d 999, the will provided: "I give and devise all the residue of my estate to Sarah R. Arthur, as long as she remains single, and if she marry it is my will that she share equally with the other heirs." Sarah Arthur was testator's stepdaughter. She died without having married, and the contest in that case developed between her heirs and the heirs of the testator, in an action to quiet title. The court held that the will gave Sarah a life estate, determinable by marriage; that notwithstanding she did not marry, the remaindermen "took under the will and not as heirs", and said, 28 S.W.2d loc. cit. 1000: "The rule is well established that, where a testator gives to a woman a life interest if she so long remains unmarried, and then directs that, in the event of her marriage, the property shall go over to another, although, according to the strict language, the gift over is expressed only to take effect in the event of the marriage of the life tenant, the gift over is held to take effect, even though the tenant for life does not marry. For a review of the authorities, * * * see Maddox v. Yoe, supra [121 Md. 288, 88 A. 225]."
In the Riesmeyer case, supra, the widow was given a life estate in certain personal property, with a provision in the will that upon her remarriage one-half the property was to go to testator's children, the other one-half to remain in trust for the widow. There was no provision for the contingency of death of the widow without remarrying. There was, however, a general "catch-all" residuary clause in favor of the widow. The court held that the property passed under the residuary clause to the widow's representatives and not to the testator's heirs at law under the laws of descent and distribution although not expressly so provided in the will. Van Osdol, C., in distinguishing the Crowson case and other cases denying the presumption against partial intestacy pointed out that in those cases either there was no residuary clause "or other provisions, purporting to dispose of the whole estate of the testator" [180 S.W.2d 63] or they contained plain language showing an intention contrary to a disposition of the part of the property involved.
Cases from other jurisdictions upholding the principle that in the case of a testamentary gift over upon marriage, the limitation over takes effect when the first taker dies without having married, even though that contingency is not in terms provided for in the will, include In re Schriever's Estate, 221 N.Y. 268, 116 N.E. 995; Maddox v. Yoe, 121 Md. *902 288, 88 A. 225; In re Mason, 1 Ch. 695, 79 L.J.Ch.N.S. 605, 102 L.T.N.S. 514; Ijams v. Schapiro, 138 Md. 16, 113 A. 343; Re Bowles, Vict.L.R. 506.
In the cases of Johnson v. Antry, Mo.Sup., 5 S.W.2d 405; Mississippi Valley Trust Co. v. Bowler, Mo.App., 149 S.W.2d 379; Mississippi Valley Trust Co. v. Palms, supra; In re Dean's Estate, 350 Mo. 494, 166 S.W.2d 529, cited by appellant, there was no provision in the will for a gift over on a certain contingency, and so they are not persuasive in the situation at bar. The case of St. Louis Union Trust Co. v. Kelley, supra, involves a gift over in violation of a positive rule of law, which is quite a different case from this one. We have examined the other cases cited by appellant, but they do not persuade us to adopt her theory.
Summarizing, this intricate will bespeaks the intention of the testator to dispose of all of his property; not to die intestate as to any of it. His intention was to provide for his wife, who would in turn provide for the children. If the trust for her benefit failed, by marriage or death or renunciation, he intended that the trust should continue for the benefit of the children until they reached age 28. If they died, the corpus would go to their descendants. If widow, children and their descendants all died, the corpus would go to testator's brothers, or their descendants. Although this intention is clear, obviously the scrivener mistakenly failed to provide for the possibilities of death of the widow unmarried, or her renunciation of the will. The court will implement the will by supplying the omission, in order to translate the testator's intention into accomplished fact, and to avoid the incongruous situation of partial intestacy.
Those respondents who were defendants below raise several points in support of their contention that appellant failed to take the necessary steps required by the Civil Code of Missouri to preserve and present to this court any questions for review. Deeming it important to dispose of this case on its merits, and our conclusions on the merits having accorded with the contentions of these respondents, we have not considered and do not express any opinion on these procedural questions.
The judgment of the trial court having been proper in all respects, should be affirmed, and that is the recommendation of the Commissioner.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the trial court is accordingly, affirmed.
ANDERSON, P. J., and McCULLEN and BENNICK, JJ., concur.