WATSON, *Plaintiff in Error*, v. WATSON.

Division One, May 23, 1892.

1 **Will, Construction of:** DEVISE. A testator, after giving a life-estate in two hundred and forty acres of land to his wife, and legacies to the children of his two deceased sons, provided by the seventh clause of his will as follows: "I further will, in regard to my other lands, that if the heirs can agree upon a satisfactory division of them that they divide them to their own notion: if not, they can agree upon the manner of selling and sell the lands and divide the proceeds equally amongst my children that are now living," naming them. *Held*, that it was the testator's intent to devise the land to his living children, and that the language was adequate for that purpose.

2. ———: ———. The words, "my other land," included the remainder in the land already devised to the widow for life.

*Error to Sullivan Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*A. W. Mullins* for plaintiff in error.

(1) While it is true that the intention of the testator must govern in the construction of his will, it is equally true that this intention must be gathered from the language employed in the instrument, and from that alone. And the question in expounding the will is not what the testator actually meant, or is supposed to have meant, but what is the meaning of his words. 2 Woerner's American Law of Administration, pp. 870, 871; *Farish v. Cook*, 78 Mo. 212, 217; *Hancock's Appeal*, 112 Pa. St. 532; *Elliott v. Topp*, 63 Miss. 138; *Martindale v. Warner*, 15 Pa. St. 471. (2) The words employed in the seventh paragraph of the will, whatever may have been the testator's intention, are insufficient to dispose of the testator's real estate, or any part of it. 2 Woerner's American Law of Administration, p. 882; *Haxtun v. Corse*, 2 Barb. Ch. 506; *Chamberlain v. Taylor*, 105 N. Y. 185; *Jackson v. Schauber*, 7 Cow. 186. (3) Notwithstanding the life-estate or estate during widowhood of Mahala Watson, widow of the testator, in the two hundred and forty acres of land specified in the will, said land is subject to partition, and the circuit court erred in refusing to so declare the law, and in deciding otherwise. 2 R. S. 1889, sec. 7132, p. 1668; *Reinders v. Koppelman*, 68 Mo. 482; *Preston v. Brant*, 96 Mo. 552.

*D. M. Wilson* and *Huston & Parrish* for defendant in error.

(1) The presumption is that the testator intended to dispose of all his property. 2 Jarman on Wills, p.

762; *Farrish v. Cook*, 78 Mo. 218; 2 Redfield on Wills, p. 116; *Vernon v. Vernon*, 53 N. Y. 351; *Jourden v. Meier*, 31 Mo. 40; *Degons v. Livingstone*, 15 Mo. 230; *Ermen v. Henry*, 5 Mo. 469; *Turner v. Timberlake*, 53 Mo. 371; *Carr v. Dings*, 58 Mo. 400; *Munroe v. Collins*, 95 Mo. 41; *Chew v. Keller*, 100 Mo. 362. (2) The court did not err in holding that the testator intended by his will to dispose of all his real property, including the remainder in the lands bequeathed to his widow. (3) The lower court did not err in holding that the language of the seventh item of the will was sufficient to, and did, operate as a devise of all the testator's land, save and except the life-estate of the widow, to his children named in that item. 1 Redfield on Wills [4 Ed.] p. 174; *Noe v. Kern*, 93 Mo. 367; *Turner v. Timberlake*, 53 Mo. 371. (4) The "will" is that certain persons shall have the absolute power of disposal of all his lands at his death. They may partition them if agreeable, or sell [them; this is his will and the intention evinced thereby is clear and decisive. The term "heirs" in that clause must be construed in connection with the subsequent description given—thus construed, all parts are permitted to have effect. *Reinders v. Koppelman*, 94 Mo. 338; *Suydam v. Thayer*, 94 Mo. 49; *Turner v. Timberlake*, 53 Mo. 371; *Allison v. Cheney*, 63 Mo. 279; *Gaines v. Fender*, 57 Mo. 342; *Carr v. Dings*, 58 Mo. 400; *Taggart v. Murray*, 53 N. Y. 233.

BLACK, J.—The plaintiff, a grandson of William Watson, brought this suit against the children and other grandchildren of William Watson for the partition of real estate.

On the twenty-fifth of April, 1887, William Watson executed a will in due form. He died in a few months thereafter, leaving a widow and seven living children and two sets of grandchildren, the children of his two

deceased sons.   The testator left a large estate in lands
and personal property.   He owned some nine or ten
hundred acres of land besides the two hundred and
forty acres which he devised to his wife for and during
her life.   The will is in these words:

"*Know All Men by These Presents:*   That I, William
Watson, of the county of Sullivan, and state of Mis-
souri, being of sound mind and considering the uncer-
tainty of life, do make, declare and publish this, my
last will and testament.

"*First.*   I order that all my just debts shall be
paid.

"*Second.*   I will and bequeath unto my wife,
Mahala Watson, during her natural life or widowhood,
the following described tract or parcel of land, to-wit:
The southeast quarter of section thirty-four (34) and
the west half of the southwest quarter of section thirty-
five (35), and I also give and bequeath unto her $1,500
which is now deposited in the First National Bank,
Milan, Missouri, which is deposited in her own name,
and this with the land is intended for her use and
comfort, but should she, at any time, from any cause,
become incapable of managing her affairs, it is to come
under the care and control of my executor or adminis-
trator.

"*Third.*   I further give and bequeath unto the
heirs of my son, James Robert Watson, to-wit:
Charles Watson, Rachel Watson, Florence Watson,
Minnie Watson, Hampton Watson, $80 each.

"*Fourth.*   I give unto the heirs of my son, Gustavus
Watson, to-wit:   Virginia Watson, Susan Watson and
Delia Watson, $133.33 1-3 each.

"*Fifth.*   I give unto my daughter, Catherine
Watson, $300, and one horse which she has selected.

"*Sixth.*   I also give unto my son, Wade H. Watson,
$300 in cash and one horse known as his horse, this

being the amount necessary to make him and Catherine equal with the other heirs.

"*Seventh.*   I further will in regard to my other land that if the heirs can agree upon a satisfactory division of them that they divide them to their own notion; if not, they can agree upon the manner of selling and sell the lands and divide the proceeds equal amongst my children that are now living, to-wit:   W. H. Watson, Sarah E. Murdock, John T. Watson, Andrew B. Watson, Manford Watson, Catherine Watson and Wade H. Watson.

"*Eighth.*   I also will and bequeath that all moneys, notes, bonds and effects be collected and equally divided between my children as above named.

"I also nominate and appoint my son, John T. Watson, as my administrator to carry out and comply with this, my last will and testament.

"In testimony whereof, I have hereunto, to this my last will and testament, subscribed my name and set my seal this twenty-fifth day of April, 1887."

The plaintiff seeks to establish these propositions, both of which were ruled against him by the trial court:   *First*, that the words of the seventh paragraph of the will are insufficient to dispose of any of the testator's real estate, or any interest therein; *second*, that the words "my other land" in the same paragraph do not include the remainder in the two hundred and forty acres devised to the widow for her life.   Either claim, if sustained, would produce an intestacy; the first as to the entire real estate, save the life-estate of the wife, the second as to the remainder in the two hundred and forty acres.

1.   When the testator uses the word "heirs" in the first part of the seventh paragraph, he manifestly means his children living at the date of the will; for he subsequently, and in the same paragraph, points out

these same living children as the persons between whom the "other land," or the proceeds arising from the sale thereof, is to be divided.   Indeed, it seems to be conceded that the word "heirs" means children living at the date of the will, and does not include grandchildren.   It is also impliedly conceded by the plaintiff that there is enough in this will to show an intention on the part of the testator to give the "other land" to the living children; but it is earnestly insisted that the testator has not used words adequate to accomplish that purpose.   "It does not," says Redfield, "seem essential to the validity of a will, that it should adopt any precise form of language in making its dispositions. The same rule obtains which does in regard to the creation of trusts, and any language which shows an intention to have the instrument operate to control the title, after the death of the testator, will be sufficient.   The following forms of expression have been held sufficient: 'It is my wish;' 'earnestly conjured;' 'most earnestly wish;' 'recommend.'   So, also, any form of expression indicating desire, or request, may be allowed to operate as a valid disposition."   1 Redfield on Wills [3 Ed.] 174.   "A will may be valid and operate as such * * * without such formal words as 'will,' 'testament,' 'devise' or 'bequest.'"   Schouler on Wills, sec. 262.

To say, "I will that my other land be equally divided between my children," naming them, would surely be a good devise of all my lands coming within that description.   This is what the testator does in this case.   He says: "I further will in regard to my other land," and then says what he wills in respect of it; namely, that the designated children divide the same to their own notion, and, if they cannot agree upon the manner of dividing the same, then they can sell the land and divide the proceeds equally among them.

He thus provides in clear terms to whom the land shall go, and how the same or the proceeds shall be divided. The intention is clearly manifested that the living children should have the other land. The intention is as clearly indicated as if he had said: "I give and devise," etc., and this being so the form of expression is immaterial. Effect must be given to the intention so clearly indicated by the words of the will.

2. The next question is whether the words, "my other land," include the remainder in the two hundred and forty acres devised to his wife for life by the second paragraph. Here there is more room for doubt.

The first rule in the construction of wills, to which the others are but aids, is that the intention of the testator is the ever controlling consideration. This intention must, of course, be determined from the words of the instrument, as applied to the subject-matter and the surrounding circumstances. In other words we must construe the will from the standpoint of the testator, by resorting to the entire instrument and all of its parts. There is good authority that evidence might have been introduced showing what advancements, if any, had been made to the deceased sons. Such evidence would not be admitted to add to or vary the words of the will, but for the purpose of placing the court in the position of the testator that it might be the better able to understand the language used. But such evidence was not introduced in this case.

There is another rule not to be overlooked in cases like this, namely, that, to deprive the heir of the estate not devised, it is not sufficient that the testator signify his intention that such heir shall not inherit any part of the estate. To deprive him of the share which the law gives him in case of intestacy, the testator must make a valid disposition of it to some other person. *Haxtun*

*v. Corse,* 2 Barb. Ch. 506; *Jackson v. Schauber,* 7 Cow. 187; *Chamberlain v. Taylor,* 105 N. Y. 185; *Farish v. Cook,* 78 Mo. 212.

A third rule to be considered in this case is the presumption that the testator intended to dispose of all of his estate. This presumption seems to amount to this, that where there is a general intention appearing in the will to thereby make a complete disposition of all of the testator's property, such general intent is allowed weight in determining what was intended by a particular devise that may admit of enlargement or limitation; but the general intent cannot control directions plainly to the contrary, or enlarge dispositions beyond their clear meaning. *Given v. Hilton,* 95 U. S. 591; Schouler on Wills, sec. 490.

Turning now to the will we find the testator first devises the two hundred and forty acres, which was the homestead, to his wife for life. He then gives to each of the children of his deceased sons designated legacies, and then gives to each of two of the living children a horse and specified sums of money to make them equal with the other heirs. He then says: "I further will in regard to my other land," etc., and in the eighth paragraph disposes of all of his personal effects. There is some ground for the argument that the words, "my other land," have reference only to the land not devised to the wife for life; but the words are sufficient to pass the remainder in the two hundred and forty acres if intended to be included in them. The real question is whether the testator intended these words should include this remainder. One of two things must be true, and that is, that it is included, or there is an intestacy as to it. The will, taken as a whole, shows a very clearly expressed purpose on the part of the testator to dispose of all of his property, real and personal. This

purpose can only be executed by allowing the words, "my other land," to include the estate in remainder in the two hundred and forty acres.   Suppose the testator had owned lands other than the two hundred and forty acres in which there was an outstanding life-estate. There can be no doubt but the testator's estate in remainder would pass under the words just quoted. We think the testator by this seventh paragraph intended to include whatever estate he had after carving out the life-estate for his wife.   Though awkwardly expressed, these words were intended to include the *quantum* of estate in lands not devised to the wife. This is a proper case to apply the presumption against partial intestacy.

This case is quite unlike that of *Farish v. Cook*, 78 Mo. 213, relied upon by the plaintiff.   There the testator gave to his wife all of his "worldly goods, consisting of household furniture, clothing, beds and bedding, money and cattle;" also a house and lot then occupied by him, to be enjoyed during her life.   It was held the words, "all my worldly goods," did not include a parcel of real estate not named in the will.   In that case there was no general intent expressed to dispose of all of the testator's real estate, nor was there anything to show that the words "worldly goods" included land. The present case is more like that of *Jourden v. Meier*, 31 Mo. 40, though that case is not precisely in point. Precedents can do no more than furnish general rules. Each case depends much upon its own peculiar facts.

Our conclusion is that the children of the testator living at the date of this will take the estate in remainder in the two hundred and forty acres.   It follows from what has been said, that the plaintiff has no interest whatever in the lands or any of them, and the court, therefore, properly dismissed his petition.

The judgment is affirmed.   All concur.