AMERICAN RED CROSS ET AL., Appellants, v. HANNIBAL NATIONAL BANK, Executor of the Estate of ESTACHE CIBU, Deceased, ET AL., Respondents, No. 41531—228 S. W. (2d) 679.

Division Two, March 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, April 10, 1950.

*Roy Hamlin* and *Chester Davis* for appellants.

*Rendlen & Rendlen, Sam Friedman* and *Sebastian Frisof* for respondents Simion, John, Joseph and Visalon Cibu and Hannibal National Bank, Executor of Estate of Estache Cibu; *Harry Carstarphen* for respondent Executor.

300

*Harold I. Baynton*, Acting Director, Office of Alien Property, *Drake Watson*, United States Attorney, *James L. Morrisson* and *Robert B. McKay*, Department of Justice Attorneys, for respondent Attorney General of the United States, as Successor to the Alien Property Custodian.

■ TIPTON, J.—This is an appeal from the circuit court of Ralls County, Missouri, from an order of that court approving the final settlement and order of distribution of the estate of Estache Cibu, deceased, made by the probate court of that county.

On March 28, 1945, Estache Cibu died at Hannibal, Missouri. Two days prior to his death he executed his will, which was duly admitted to probate. By his will, the Hannibal National Bank was made executor of his estate. This bank was appointed executor by the probate court. At the time of deceased's death he had on deposit in that bank $9,249.96. It is the contention of appellants that under the third and seventh provisions of the will they are entitled to the fund that was on deposit in that bank. The provisions are:

■ "Third. All my money in the Hannibal National Bank I give, bequeath and devise to my four brothers share and share alike, or the heirs of their bodies."

"Seventh. In case it is not possible for my brothers to inherit because of living in an enemy country, I give and bequeath this money as follows, to-wit: $100 to the Ralls County Chapter of the Red Cross, $100 to St. Elizabeth's Hospital, Hannibal, Missouri, $100 to the Blessed Sacrament Church, and $100 to Ispos Apostol. All of the balance in said bank to be divided equally among these mentioned in this paragraph."

The alien property custodian of the United States issued vesting order No. 8509 on March 26, 1947, and it was filed in the probate court of Ralls County on April 8, 1947. That vesting order states that he has found:

"1. That Simon (Simion) Cibu, John Cibu, Joseph Cibu, Visalon Cibu and Nicola Andrea, whose last known addresses are Rumania, are residents of Rumania and nationals of a designated enemy country (Rumania);

"2. That all right, title, interest and claim of any kind or character whatsoever of the persons named in sub-paragraph 1 hereof in and to the estate of Estache (Estachie) Cibu, deceased, is properly payable or deliverable to, or claimed by, the aforesaid nationals of a designated enemy country (Rumania);

"3. That such property is in the process of administration by the Hannibal National Bank, as executor, acting under the judicial supervision of the Probate Court of Ralls County, Missouri;

"And is hereby determined:

"4. That to the extent that the persons named in sub-paragraph 1 hereof are not within a designated enemy country, the national

interest of the United States requires that such persons be treated as nationals of a designated enemy country (Rumania).

"All determinations and all action required by law, including appropriate consultation and certificate, having been made and taken, and it is being deemed necessary in the national interest.

"THERE IS HEREBY VESTED in the attorney general of the United States the property described above, to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States."

On April 16, 1947, the Hannibal National Bank, as executor, filed its final settlement which was approved by the probate court on May 10, 1947, and distribution was ordered, including $2,069.27 each to Simon, John, Joseph and Visalon Cibu, who were found to be the brothers of the decedent. In compliance with vesting order No. 8509, the court ordered payment of these bequests to the Office of Alien Property Custodian, Department of Justice of the United States. As previously stated, this order and final settlement was approved by the circuit court on appeal.

At the time of his death, the deceased's brothers referred to in clause three of the will lived in Rumania. At that time they were alien enemies. Under the public policy of this state, they may inherit personal property. In re Rahn's Estate, 316 Mo. 492, 291 S. W. 120. In fact, section 15228 specifically provides that aliens shall be capable of acquiring real estate by devise or descent. Appellants do not contend otherwise but they do contend that since these four brothers are not entitled to immediate possession, then they are entitled to the money on deposit in the Hannibal National Bank, under clause seven of the will.

Appellants contend that the phrase, "in case it is not possible for my brothers to inherit because of living in an enemy country," of clause seven means that the four brothers must be entitled to immediate possession of this deposit to inherit it, and if not it goes to the other parties named in that clause of the will. Appellants say that the law favors vested estates, the present enjoyment thereof, and also the law favors a will that disposes of the entire estate instead of partial intestacy.

Of course, these rules of construction apply if the will is ambiguous. However, the paramount rule in construing a will is that the testator's intent must govern unless contrary to some positive rule of law, and that intention must be ascertained primarily from the four corners of the will. If a will is unambiguous and leaves no room for doubt as to testator's intention, auxiliary rules of construction cannot be resorted to. St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S. W. 2d 344.

We think the word "inherit", as used in the will, must be given its ordinary meaning. It cannot be said that in this will it means im-

mediate possession. The mere fact that the deposit was seized by the alien property custodian does not necessarily mean these four brothers will not receive it. When the will is read as a whole, we think it is plain and unambiguous, and means that if, by law, these brothers cannot inherit the property, then, and only then, the parties in clause seven will be entitled to the deposit in question. We have already shown these brothers can, under the laws of this state, inherit.

█ Appellants next contend in their brief that "the office of Alien Property Custodian, while reciting in his vesting order that he has 'found' certain things, he did not state that he found the persons mentioned in paragraph one of the vesting order to be the four brothers of Estache Cibu, nor did he find that if dead that they had heirs of their bodies surviving them."

Pursuant to a motion by respondents, we ordered an additional transcript of a pre-trial conference, held before the trial judge, sent to this court, which order has been complied with by the clerk of the trial court. In part, it reads:

"BY MR. RENDLEN: We say that the four brothers named by Mr. Watson, in our best judgment and belief, are resident citizens and nationals of Romania during all of the time until now, Mr. Watson, in so far as we are informed and believe, and so far as we can admit that Nicolae V. Candea was a national of Romania during all of the time. Does that answer it?

"BY MR. WATSON: Yes. Now, I understand you, Mr. Davis, to make the same admission?

"BY MR. DAVIS: We make the same admission, not as to the fifth person but as to the four brothers, we do."

There were some statements to the effect that the fifth person named in the order, namely Nicola Andrea, also called in this conference Nicolae Candea, had purchased the interest of the testator's four brothers in his estate.

There can be no doubt that all parties to this litigation admitted before the trial judge at the pre-trial conference that Simon (Simion) Cibu, John Cibu, Joseph Cibu and Visalon Cibu, named in the vesting order, were the four brothers of the testator. We hold that this assignment of error is without merit.

From our examination of the record, we conclude that the trial court properly decided this case. The judgment of that court is, therefore, affirmed. All concur.