MERCANTILE TRUST COMPANY, a Corporation, as Executor of the Last Will and Testament of Harriet Elizabeth Russell, deceased; and as Testamentary Trustee Under the Last Will and Testament of Harriet Elizabeth Russell, deceased, and Senter M. Jones, Jr., as Successor Co-Trustee of said Last Will and Testament, Plaintiffs-Respondents,

v.

Mrs. Ingram C. SOWELL, Mrs. James A. Crutchfield, Sr., Defendants-Appellants,

Mrs. Burt M. Jack, Sr., Defendant,

Harriet Elizabeth Jack, a Minor, Defendant-Appellant,

Russell Minton Jack, Burt Maskill Jack, Frank Ellsworth Jack, II, Defendants,

Harry Ellsworth Jack, Defendant-Appellant,

Webster Groves Presbyterian Church, a Corporate Body, Defendant-Respondent,

Washington University, a Missouri Corporation, Defendant-Respondent,

Mercantile Trust Company and Senter M. Jones, Jr., Executors of the Estate of Reuben James Russell, Defendants-Appellants.

No. 48001.

Supreme Court of Missouri,

En Banc.

July 16, 1962.

Dissenting Opinion July 20, 1962.

Motion for Rehearing Denied
Sept. 10, 1962.

Harold A. Thomas, Jr., and Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for Mercantile Trust Company and Senter M. Jones, Jr., Executors, Estate of Reuben James Russell, Dec'd.

Forrest C. Donnell, St. Louis, for defendant-appellant, Harry Ellsworth Jack.

David Y. Campbell, St. Louis, for appellant, Harriet Elizabeth Jack.

Richard S. Bull and Carter, Bull & Baer, St. Louis, for respondent, Washington University.

John A. Arnold, St. Louis, for respondent, Webster Groves Presbyterian Church.

Lloyd E. Boas, St. Louis, for appellants, Mrs. Ingram C. Sowell and Mrs. James A. Crutchfield; Musick, Peeler & Garrett and E. Leroy Tolles, Los Angeles, of counsel.

WESTHUES, Chief Justice.

Plaintiffs Mercantile Trust Company, a corporation, as executor of the last will and testament of Harriet Elizabeth Russell, deceased, and as testamentary trustee under her will, and Senter M. Jones, Jr., as successor co-trustee of said will, filed this, a declaratory judgment, action in the Circuit Court of St. Louis County, Missouri, seeking the construction of the will.

The principal question involved is whether by the terms of the will the testatrix made a disposition of her entire estate or whether she died intestate in case certain beneficiaries under a trust created by the will were living at the expiration of the trust.

The trial court entered a decree to the effect that the testatrix by her will made a disposition of her entire estate. From this judgment, certain defendants appealed.

The appealing defendants are Mrs. Ingram C. Sowell, Mrs. James A. Crutchfield, Sr., Harriet Elizabeth Jack, a minor by her guardian ad litem, and Harry Ellsworth Jack. Defendants Mercantile Trust Company and Senter M. Jones, Jr., appealed as executors of the estate of Reuben James Russell, deceased, who was the husband of the testatrix. Defendants who did not appeal are Mrs. Burt M. Jack, Sr., Russell Minton Jack, Burt Maskill Jack, and Frank Ellsworth Jack II. The other defendants, Webster Groves Presbyterian Church and

Washington University, a Missouri corporation, are respondents.

The testatrix' maiden name was Harriet Elizabeth Jack. She was born on January 14, 1876. She married Reuben James Russell on May 25, 1898. No children were born of this marriage. She died on April 15, 1955. Her husband died on February 11, 1957. At the time she executed the will in question, March 17, 1949, her father, her mother, and all six of her brothers were deceased. Testatrix had no sisters. Her heirs at law were her husband and two nieces and four nephews. The defendants Mrs. Ingram C. Sowell and Mrs. James A. Crutchfield, Sr., were her nieces. Defendants Russell Minton Jack, Burt Maskill Jack, Frank Ellsworth Jack II, and Harry Ellsworth Jack were her nephews.

Respondents Webster Groves Presbyterian Church and Washington University contend that they are the residuary legatees and entitled to the entire estate after the termination of the trust created by the will. Appellants, on the other hand, contend that the above-named respondents are the residuary legatees only in the event that the four persons named as beneficiaries die prior to ten years after the death of Reuben James Russell. If respondents are correct in their position, other questions presented by appellants automatically drop out of the case. We are of the opinion that respondents' position is well taken.

(It should be noted here that the Mercantile Trust Company, a corporation, is the same Trust Company named in the will as the Mercantile Commerce Bank & Trust Company, a Missouri corporation. The change in name occurred after the will was executed and before this action was filed. It should be further noted that the parties, during the trial, agreed that the correct spelling of testatrix' name is "Harriett" and not "Harriet" as it sometimes appears in the record.)

Directing our attention to the will, we shall state the substance thereof except that we shall set forth in full those provisions which we deem to have a bearing on the questions under consideration. By the first article, testatrix revoked all prior wills made by her. By the second and third articles, testatrix provided for the payment of all her obligations, such as debts, taxes of all kinds, and any promises she had made, such as contributions or gifts to charities. Whatever disposition testatrix made of her estate, it was done by articles four and five which we set forth in full as follows:

"*FOURTH*: I give and bequeath absolutely and forever all of my household furniture and equipment, rugs, books, pictures, silver, glass, china and other household goods, jewelry, clothing and other personal effects and all automobiles and automobile equipment owned by me at the time of my death to my husband REUBEN JAMES RUSSELL, if he shall survive me; if he shall not survive me or if he shall die at or about the same time by reason of any common accident, calamity or other disaster then the above articles shall be sold by my Executors and the proceeds thereof shall become a part of my residuary estate to be disposed of as hereinafter provided.

"*FIFTH*: All the rest, residue and remainder of my estate of every name, nature and description and wherever situated, I give, devise and bequeath to my Trustees, in trust nevertheless, to invest and from time to time reinvest the same, and to collect the rents, income, issues and profits thereof and therefrom, and after first deducting all expenses attendant upon the execution of the trust to hold, pay over or apply the principal and income thereof and therefrom as follows:

"(a) To hold such principal during a trust term to be measured by the life of my husband, REUBEN JAMES RUSSELL, if he shall survive me.

"(b) Until the expiration of such trust term to pay over or apply the entire net income thereof as nearly as possible in equal quarterly installments

to my husband, REUBEN JAMES RUSSELL, as long as he shall live.

"(c) Upon the death of the survivor of my said husband and me to divide the principal or so much thereof as shall then remain, into five (5) equal shares and to set apart and hold in trust one such equal share for each of the following:

"(1) The Webster Groves Presbyterian Church, Webster Groves, Missouri, or its successors.

"(2) MRS. INGRAM C. SOWELL (nee FRANCIS JACK), 1369 Hyde Street, San Francisco, California.

"(3) MRS. JAMES A. CRUTCHFIELD, SR. (nee HELEN JACK), 935 Olive Avenue, Coronado, California.

"(4) MRS. BURT M. JACK (nee ROXANA B. MINTON), 30 North Iola Drive, Webster Groves, Missouri.

"(5) MISS HARRIETT ELIZABETH JACK, daughter of RUSSELL M. JACK, 835 Pine Tree Lane, Webster Groves, Missouri.

"(d) To hold the equal shares so set apart for each of the above named for a trust term extending for a period of ten (10) full years after the death of my husband, REUBEN JAMES RUSSELL, or ten (10) full years after my death if he shall predecease me.

"(e) During each such trust term to pay over or apply the net income accruing on each such share to the beneficiary for whom such share is held in trust in as nearly equal quarterly installments as practicable.

"(f) In the event any of the individual beneficiaries above named shall predecease me, or shall die after the creation of the trust for her benefit, the allocation of income to such person or persons shall cease; the total number of beneficiaries shall be deemed to have been reduced and the income and principal allocated to said deceased beneficiary or beneficiaries shall be prorated and added to the principal of the trusts for the then surviving beneficiaries; and the other provisions and limitations with relation to the remaining beneficiaries shall remain in force and effect; except that if all of the individual beneficiaries above named shall predecease me or shall die within the ten (10) year period and if my husband shall then be dead, the trust shall cease and terminate and my Trustees shall pay over the property then constituting such trust absolutely and forever and free from any trust, as follows:

"(1) Ninety (90) per cent to Washington University of St. Louis, Missouri, to be used by the Corporation of the University (the Board of Directors) as they shall deem best, but it is my wish that the principal of the fund be kept intact to be known as the 'Reuben James and Harriett Elizabeth Russell Fund' and the income used only for the support and maintenance of the University and primarily for the Medical Research Department. This is not an absolute limitation on the use of this fund nor on the income thereof but is simply an expression of my wishes.

"(2) The remaining ten (10) per cent to the Endowment Fund of the Webster Groves Presbyterian Church.

"(3) In making the division between the two residual beneficiaries above named, my Trustees shall divide the principal and accumulated income of the trust estate, insofar as is practicable, in kind."

By articles six, seven, eight, nine, ten, eleven, and twelve, testatrix instructed the trustees as to the manner of dealing with the trust property. The instructions were very detailed. The principal of the estate was to be kept inviolate except for the needs of her husband. We quote in full article

eleven because we deem it has a bearing on the question of the intention of testatrix. It reads:

"*ELEVENTH*: I hereby nominate and appoint my husband, REUBEN JAMES RUSSELL and the MERCANTILE COMMERCE BANK & TRUST COMPANY, a Missouri Corporation, of St. Louis, Missouri, to be the Executors and Trustees under this, my Last Will and Testament. If my said husband should predecease me or if he should not at any time be able or willing to serve as Co-Executor or Co-Trustee, I nominate and appoint SENTER M. JONES, JR. to act as Co-Executor and Co-Trustee. If I am predeceased by my husband, REUBEN JAMES RUSSELL, and by SENTER M. JONES, JR., I will and direct that the MERCANTILE COMMERCE BANK & TRUST COMPANY shall act as sole Executor and I will and direct that a Co-Trustee to act with the MERCANTILE COMMERCE BANK & TRUST COMPANY shall be appointed, in writing, by the then Chancellor of Washington University. Such successor Executor or Trustee shall have all the rights and powers herein granted to the Executor and Trustee originally named, and I will and direct that none of my Executors or Trustees shall be required to give any bond or security as such."

■ The duty of the courts in construing wills is well stated in 95 C.J.S. Wills § 590, pp. 737–743, to be: "The chief object and purpose of construction of a will is to discover and carry out the intent of the testator as expressed in the will, and this is the prime duty of the court, and its sole function or province. In other words, the intention of the testator is the prime consideration, controlling factor or element, or pole star to guide the court to which the problem is presented in the construction of every will." A rule which may aid us further in this case may be found in 95 C.J.S. Wills § 593, pp. 779, 780. It reads: "In construing a will, the general testamentary scheme may be considered as bearing on testator's intention, and the will should always be interpreted to carry out as far as possible the general scheme or intention as shown by the entire document. The dominant idea pervading a will must control, and in case of doubt a will should be construed in favor of a general or primary intention."

All of the above statements of the law taken from 95 C.J.S. are supported by numerous citations of cases from many states including Missouri.

■ Looking at the will and giving due consideration to all parts thereof, the question before us is, did the testatrix by her will intend to dispose of all of her property? We are of the opinion that she did. To hold otherwise would mean that testatrix did not intend that the Webster Groves Presbyterian Church and Washington University should be residuary legatees unless a most unlikely event was to occur, that is, that all four of the individual beneficiaries named in (c) of the fifth article should die within ten years after the death of her husband. That time would be February 11, 1967, the husband having died on February 11, 1957. That these four individuals, all younger than testatrix or her husband (and one not yet 21 years of age), may die prior to 1967 is a possibility but highly improbable. That testatrix should have provided for such an unlikely event evidences an *intent* on the part of testatrix not to overlook any eventuality.

Let us now closely scrutinize the provisions of the will. We note that in article four testatrix bequeathed her personal effects, such as household goods, to her husband absolutely. However, in the event he should not survive testatrix, then the property was to be converted into cash and "become a part of *my residuary estate to be disposed of as hereinafter provided.*" (Emphasis supplied.) Looking at the fifth article, we note subparagraph (f) (3) where the testatrix instructed her trustees to the effect that "(3) In making the division between the *two residual beneficiaries above*

*named,* my Trustees shall divide the principal and accumulated income of the trust estate, insofar as is practicable, in kind." (Emphasis supplied.)

The "two residual beneficiaries above named" could only be Washington University and the Webster Groves Presbyterian Church. What property were the trustees directed to distribute to the two named beneficiaries? The answer is *"the principal and accumulated income of the trust estate."* (Emphasis supplied.) When were the trustees to make this distribution? It is our opinion that this should be done at the termination of the trust created by the fifth article of the will and that the termination date was to be ten years after the death of the testatrix or the death of her husband, in case he survived the testatrix, except and unless all individual beneficiaries of the trust should die prior to the expiration of ten years, in which event, the trust should then immediately cease and the trust estate be divided between the two residuary legatees.

By a provision in article eleven, supra, the testatrix directed that in the event her husband and Senter M. Jones, Jr., predeceased her a successor co-trustee should be appointed by the then Chancellor of Washington University. Would the testatrix have made that provision if she had intended by her will that Washington University would be a beneficiary only upon the happening of an event most likely not to occur? We think not. In our opinion, the testatrix had in mind that Washington University would eventually get title to 90% of the trust property and therefore the University should have some control of the management of the property in case her husband and Senter M. Jones, Jr., predeceased her. It may be further noted that in (f) (1) of article five, whereby 90% of testatrix' property was given to Washington University, the testatrix expressed the wish that such property should be used "primarily for the Medical Research Department." We think that this direction indicates that in the

mind of the testatrix she had given the University the bulk of her estate.

So far, we have found that testatrix clearly indicated in the fourth article, in fact she stated, that her residuary estate would be disposed of by her will. In the last paragraph of article five, she directed that the trustees should divide her estate between "the two residual beneficiaries above named." Then, in the eleventh article, she directed that under certain circumstances Washington University should have the right to name a co-trustee to manage the property of her estate. All of these expressions are consistent with but one conclusion, that is, that the testatrix fully intended to bequeath to the Webster Groves Presbyterian Church and to Washington University her entire estate after the trust ended. In reaching this conclusion, we have considered the meaning of such terms as "residuary estate," "residual beneficiaries," "residuary legatee," etc. 77 C.J.S. p. 308; 96 C.J.S. Wills § 1097, p. 818. Further, in determining the intent of the author of a will, parts of the will may be considered to explain other parts. 95 C.J.S. Wills § 620 b, p. 864.

There were two opinions written in this case in Division Two of this Court. Neither received a carrying vote. In one of these opinions a portion of (f) of article five of the will was transposed and set in with (d) of article five. Transposition of sentences and words may be made in arriving at the intention of the author of a will. See 95 C.J.S. Wills § 607, p. 808, where we find the rule to be: "In order to preserve a testator's expressed intention the court may transpose words, expressions, or sentences in his will; but not where the language is plain and unequivocal and where to do so would give it a different meaning, or create an intention which the testator had not expressed. There must be something in the will which makes it certain that the expressed intention of the testator necessitates alteration of the language used." See also Mercantile Commerce Bank & Trust Co.

v. Binowitz, Mo.App., 238 S.W.2d 893, l. c. 899(11).

We adopt, without quotation marks and with some modification in language, the following portion of one of the opinions prepared in Division Two dealing with the transposition of a part of paragraph (f) into paragraph (d). It reads as follows: Standing alone, paragraph (d) of Article Fifth establishes ten years as the duration of the trust in question. Nevertheless, all parties seem to agree that the term of the trust may be shortened by virtue of the clause in the latter part of paragraph (f), which reads as follows: "except that if all of the individual beneficiaries above named shall predecease me or shall die within the ten (10) year period and if my husband shall then be dead, the trust shall cease and terminate." This clause dealing with the termination of the trust and modifying the ten-year period is found in a paragraph otherwise dealing with the allocation and distribution of income to the four individual beneficiaries. While it is proper to limit the ten-year term by the clause quoted, it is not proper to lift out this clause alone to qualify and modify paragraph (d) without taking with it the remainder of paragraph (f) which deals with the disposition of the corpus upon the termination of the trust. All of the provisions on termination of the trust and distribution of the principal must be read together.

It can be demonstrated that the ambiguity which causes the present controversy results primarily from the arrangement of the subject matter of the will and particularly the separation of the provisions dealing with the duration of the trust and the disposition of the residue upon its termination. By transposing and combining the last portion of Article Fifth (f) and repunctuating in two instances, we have the following result (the portion transposed is placed in italics in order to make the transposition more readily apparent):

"(d) To hold the equal shares so set apart for each of the above named for a trust term extending for a period of ten (10) full years after the death of my husband REUBEN JAMES RUSSELL, or ten (10) full years after my death if he shall predecease me, *except that if all of the individual beneficiaries above named shall predecease me or shall die within the ten (10) year period and if my husband shall then be dead, the trust shall cease and terminate and my Trustees shall pay over the property then constituting such trust absolutely and forever and free from any trust, as follows:*

"(1) *Ninety (90) per cent to Washington University of St. Louis, Missouri, to be used by the Corporation of the University (the Board of Directors) as they shall deem best, but it is my wish that the principal of the fund be kept intact to be known as the 'Reuben James and Harriett Elizabeth Russell Fund' and the income used only for the support and maintenance of the University and primarily for the Medical Research Department. This is not an absolute limitation on the use of this fund nor on the income thereof but is simply an expression of my wishes.*

"(2) *The remaining ten (10) per cent to the Endowment Fund of the Webster Groves Presbyterian Church.*

"(3) *In making the division between the two residual beneficiaries above named, my Trustees shall divide the principal and accumulated income of the trust estate, insofar as is practicable, in kind.*

"(e) During each such trust term to pay over or apply the net income accruing on each such share to the beneficiary for whom such share is held in trust in as nearly equal quarterly installments as practicable.

"(f) In the event any of the individual beneficiaries above named shall predecease me, or shall die after the creation of the trust for her benefit, the

allocation of income to such person or persons shall cease; the total number of beneficiaries shall be deemed to have been reduced and the income and principal allocated to said deceased beneficiary or beneficiaries shall be prorated and added to the principal of the trusts for the then surviving beneficiaries; and the other provisions and limitations with relation to the remaining beneficiaries shall remain in force and effect."

The will could be read in the same way without transposition, but in the form set out above there would be little room for argument that the testatrix did not intend the residue to go to the University and the Church regardless of when the trust terminated. Granted that a very cautious draftsman, in order to avoid any possible chance of ambiguity, would even in this transposed form insert some such phrase as "then upon termination of the trust whenever and however caused," my Trustees shall pay over, etc. But not all legal drafstmen are of the same capacity and then, too, "Homer himself hath been observed to nod." Such human shortcomings are what give rise to the *rules of construction noted here*, as well as Sec. 474.430, RSMo 1959, V.A.M.S., requiring the courts to give effect to "the true intent and meaning of the testator."

Not many authorities are cited in this opinion. It has been well stated that "precedents are of less value in the construction of wills than in any other field of inquiry." Thompson v. Smith, Mo., 300 S.W.2d 404, l. c. 406(2). However, we have read quite a number of authorities, including 57 Am.Jur., Wills, in particular Secs. 1153, 1158, and 1159, as well as the sections of C.J.S. pertaining to the interpretation of wills and many cases, including the following Missouri cases: Gehring v. Henry, 332 S.W.2d 873; Ussher v. Mercantile Trust Co., 328 S.W.2d 699; Lang v. Estorge, 242 S.W.2d 50; Mercantile Commerce Bank & Trust Co. v. Binowitz, Mo.App., 238 S.W.2d 893; Lutheran Altenheim Society of St. Louis v. Younghouse, 365 Mo. 39, 275 S.W.2d 361.

In construing the will of the testatrix in this case, we have not rendered the will unnatural in its result. In fact, the opposite is true. Furthermore, by such an interpretation, effect is given to all parts of the will. In other words, it renders the will and all of its provisions a harmonious whole. No clause is rendered meaningless nor one inconsistent with another. Most important, such a construction reflects the true intention of the testatrix which after all is said and done should be the primary object to be attained.

We are of the opinion that the trial court decided the issues presented to him correctly.

The judgment is affirmed.

STORCKMAN, LEEDY and DALTON, JJ., concur.

EAGER, J., dissents in separate opinion filed.

HOLLINGSWORTH, J., dissents.

HYDE, J., dissents and concurs in separate dissenting opinion of EAGER, J.

EAGER, Judge (dissenting).

I find that I am unable to concur in the reasoning or the result of the foregoing majority opinion. Actually, there is little or no controversy about the principles involved in the construction of a will and they have been repeated so often that it is hardly necessary to set them out here. The difficulty arises in applying those principles to a concrete situation.

It seems wholly ineffective to me to say that the testatrix here must be presumed to have intended to dispose of all her property; naturally, the ordinary person who

prepares and executes a will intends to do so. The real question is—did she do it or not? And the mere reconstruction of a supposed intent will not supply a complete omission in the dispositive provisions of a will.

In my opinion there is in this will a complete absence of any provision disposing of the principal of the residue, either to the beneficiaries named in subparagraph (c) of Article Fifth or in subparagraph (f),—except, of course, for the conditional disposition provided for in subparagraph (f) to the University and the Church. In other words, there is a complete absence of such disposition in case any of the individuals named in subparagraph (c) survived the ten-year period following the death of the husband of testatrix. This, I feel, results in an inescapable intestacy as to the entire residue of the estate. The result may be unfortunate, but we are not empowered to rewrite the will. Under Section 468.150, RSMo 1949, V.A.M.S. (now § 474.320) every will is required to be in writing and duly authenticated, except nuncupative wills (§§ 468.160, 468.170, Id., now § 474.340). The judicial function of construing the will a testator makes does not authorize a court to make a new will or an equitable distribution of the estate. If upon an examination of the will it is found unambiguous and a term used therein is clearly expressed and has a well defined meaning, exposing testator's intent, there is no occasion for resort to the canons of construction or extrinsic evidence that might have some bearing upon an unexpressed intention of the testator. St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W. 2d 344, 349[2]; American Red Cross v. Hannibal Nat. Bk., 360 Mo. 297, 228 S.W.2d 679, 682[3]; Thomas v. Higginbotham, Mo., 318 S.W.2d 234[2, 3], and cases infra. " 'However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention

thus proved into execution.' " Lang v. Estorge, Mo., 242 S.W.2d 50, 53[1, 2], and cases cited. Approved in Gehring v. Henry, Mo., 332 S.W.2d 873, 878[12, 13]; In re Fowler's Estate, Mo., 338 S.W.2d 44, 48[2].

The clause in ¶ (f) of Article Fifth, reading, so far as involved: "except that if all of the individual beneficiaries above named [referring to ¶ (c)] * * * shall die within the ten (10) year period [referring to ¶ (d)] * * *, the trust shall cease and terminate and my trustees shall pay over the property" to respondents, is in professional language, is unambiguous and clearly creates an interest subject to a condition precedent. This is true whether the bequest to respondents be treated as a contingent remainder or a contingent executory bequest. The quoted provision conveys and creates an interest in the property to respondents only upon the happening of the event, dubious under the facts involved, of all four individual beneficiaries being dead at the termination of the ten-year period. The property does not vest in respondents if one or more of said beneficiaries be then living. See, among others, Norman v. Horton, 344 Mo. 290, 126 S.W. 2d 187, 191[8, 9], 125 A.L.R. 531; Sullivan v. Garesche, 229 Mo. 496, 129 S.W. 949, 951, 952, 49 L.R.A., N.S., 605; Lewis v. Lewis, 345 Mo. 816, 136 S.W.2d 66, 71 [7, 8]; 33 Am.Jur., Life Estates, etc., § 68; 31 C.J.S. Estates § 71.

Testatrix is presumed to have known the law and the legal effect of the language she used. Thomas v. Higginbotham, Mo., 318 S.W.2d 234, 237[3]. If she made mistakes, we cannot rewrite her will. Gehring v. Henry, Mo., 332 S.W.2d 873, 878.

The presumption against intestacy often relied upon has definite exceptions and it "cannot control directions plainly to the contrary, or enlarge dispositions beyond their clear meaning." Watson v. Watson, 110 Mo. 164, 171, 19 S.W. 543, 545. It is stated in Wills, 57 Am.Jur. § 1159, that it "will not prevail where the language of the

will, fairly construed, * * * is insufficient to carry the whole estate." See 95 C.J.S. Wills § 615, p. 840.

If we were to speculate upon the intent of the testatrix, we might suggest that it would seem wholly unreasonable for her to have cut off absolutely at the end of ten years the four chosen representatives of all her relatives, especially when three of them are said to have then been well along in years. It would be much more reasonable to assume, and speculate, that she intended to continue the income to those of the four who survived the ten years until all had died, with the principal then to go to the University and the Church. This sort of speculation merely shows, however, that something vital was omitted from the will, that we cannot be sure what it was, and that the courts cannot supply the defect.

The reference in the principal opinion to "two residuary beneficiaries" appears in paragraph numbered 3 of subparagraph (f), following the provision for the conditional payment of principal to the University and the Church in case all the individual beneficiaries named in (c) have died within the ten-year period. Consequently, it adds nothing to the other provisions of the will. It also seems that the use of specific words providing that the University and the Church should receive the principal "if all of the individual beneficiaries above named shall predecease me or shall die within the ten (10) year period," would by normal rules of construction exclude the transfer of the principal to them if all of the individual beneficiaries did *not* so die. Otherwise, the words would be meaningless. But they are there, and we cannot ignore them. The fact remains that the will thus provided in express terms that the principal should go to the University and the Church *if* the individual beneficiaries all died within ten years and that meaning cannot be changed by transposition of words and phrases.

In conclusion, we note again as generally applicable, the cases of Lang v. Estorge, Mo., 242 S.W.2d 50, and Crowson v. Crowson, 323 Mo. 633, 19 S.W.2d 634, but it would be more or less pointless to discuss cases in detail in this dissent. It is my view that this will did not contain a mere ambiguity, but that there was a complete omission of any provision disposing of the principal of the residue under the existing facts, and that in supplying this omission we are rewriting the will; and that such is not our function, however desirable the result may be.

Under the circumstances, it would be fruitless to discuss the other points raised by certain appellants, for the point decided in the majority opinion makes these wholly immaterial. We do note, however, that the views expressed in this opinion would also obviate any ruling that the beneficiaries named in subparagraph (c) of Article Fifth should receive the principal of the residue as an "equitable defeasible fee," for there appears to be no conveyance of the principal to them either equitable or otherwise. In this opinion we have incorporated certain excerpts from the opinion written by Commissioner Bohling in Divison Two, without quotations. For these reasons I respectfully dissent.

HYDE, Judge (dissenting).

I respectfully dissent from the rulings of the principal opinion herein and concur in the dissenting opinion of EAGER, J., but would add the following comments because it seems to me that the most clearly expressed intent indicated by the will of Harriett Elizabeth Russell, considered as a whole in the light of the surrounding circumstances, is that the corpus of the trust estate (except the part designated for the church) should go to the named individual beneficiaries of the trust surviving at the end of the ten-year trust period. I cannot find any intent for any corpus to go to Washington University unless all of the individual beneficiaries should predecease testatrix or die within the ten-year trust period. The will as

written clearly says so and as rearranged in the principal opinion still says so.

I find the clearest expression of intent in the following provisions of paragraph Fifth: (c) "to divide the *principal* * * * into five (5) equal shares and to set apart and hold in trust one such equal share for each of the following: (naming them)";

(e) providing for payment of income only during the trust term;

(f) "In the event any of the individual beneficiaries above named shall predecease me, or shall die after the creation of the trust for her benefit, the allocation of income to such person or persons shall cease; the total number of beneficiaries shall be deemed to have been reduced and the income and *principal* allocated to said deceased beneficiary or beneficiaries shall be prorated and added to the *principal* of the trusts for the then surviving beneficiaries * * *." (All emphasis ours.)

It seems to me that these references to the interest of the individual beneficiaries in the principal indicate an intention that the principal was to go to them or to the survivors of them at the end of the trust term. This intent is further indicated by paragraph Tenth providing that "no beneficiary of any trust estate herein created shall have any right, power or authority, at any time, either directly or indirectly, to sell, assign, transfer, mortgage, pledge or otherwise anticipate any income from or any *principal* of any equitable interest in any of said trust estate, nor shall any of the income or *principal* of any said trust estates be subject to any debt or obligation of any beneficiary or any judgment against any beneficiary, nor shall any of said income or *principal* of any said trust estates be subject to any process or procedure or proceedings at law or in equity to subject the interest of any beneficiary therein to any claim of any creditor or claimant." Certainly if the beneficiaries were to have no interest in the principal of this trust, as held by the principal opinion herein, there was no reason whatever to so mention such an interest in the principal.

Looking at the surrounding circumstances, it appears that testatrix was the youngest of seven children, all the others being deceased when the will was made in 1949 and only two of them leaving children surviving at that time. The children of one brother, Mrs. Sowell and Mrs. Crutchfield (two of the trust beneficiaries), were 53 and 55 years old when the will was made. The other brother left four adult sons and his widow, Mrs. Burt M. Jack, one of the trust beneficiaries, who was 59 years old when the will was made. The fourth individual beneficiary is the granddaughter of Mr. and Mrs. Burt M. Jack, who was named for testatrix, and she was not yet six years old when the will was made. Thus both surviving branches of the family were represented by the trust beneficiaries and it seems most unreasonable to me to attribute to testatrix an intent to give these three older women (for whom testatrix apparently believed income for care and support would be required after she and her husband died) income for only ten years and then leave them in old age with nothing if they survived the trust term. Likewise it seems unreasonable to attribute to her an intent to leave her minor grandniece (her namesake) with nothing, at the end of the ten-year trust term, when she would likely most need funds for education and support. It seems most reasonable to me that testatrix would not expect all of the three older women to survive the ten-year trust term but intended those who did to have their share of the corpus; and therefore she expected and intended that most or all of the corpus would go to her young grandniece. Paragraph Fifth of her will shows that she considered the principal of each of the five shares to be a separate trust and in subparagraph (f) she said that in case of death of individual beneficiaries "the *principal* allocated to said

deceased beneficiary or beneficiaries shall be prorated and added to the *principal* of the trusts for the then surviving beneficiaries." Why would she thus mention principal if only income was involved? All of these provisions and circumstances strongly indicate to me an intent that the principal should go to the beneficiaries who survived the ten-year trust term. Unfortunately the will does not directly or positively provide for payment of the corpus to beneficiaries who survive the trust term; but it certainly does not provide for paying it or any part of it to Washington University if any of them do. Therefore, it seems to me that at least we should hold, if any of the individual beneficiaries survive the trust term, testatrix died intestate as to the corpus.